### In re MASON et al.

### KIER v. STEER.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1922. Rehearing Denied August 7, 1922.)

#### No. 3844.

Bankruptcy ⬅140(3)—Stocks held by broker held identified as property of claimant.

Claimant purchased, through bankrupts, as brokers, and paid for, 100 shares of stock, which were bought by bankrupts' New York correspondent for their account, but, without claimant's knowledge, were held with other stocks for advances made to bankrupts. After bankruptcy sale of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·the other stocks paid the indebtedness and the only stock of the kind which came into the hands of the trustee was the 100 shares so bought, ·for which there was no other claimant. Bankrupts' books showed the same number paid for by claimant. *Held*, that such shares were sufficiently identified as the property of claimant, and that he was entitled to their: delivery, having made demand for them before the bankruptcy.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

In the matter of C. F. Mason and William McD. Owen, partners trading as Mason & Owen, and individually, bankrupts. From an order for delivery of certain stocks to J. E. Steer, claimant, George P. Kier, trustee, appeals. Affirmed.

Appeal by the trustee of the bankrupts from an order of the District Court ·directing delivery of certain shares of stock to appellee, Steer. In February, 1920, at San Diego, Cal., Steer deposited $150 with Mason & Owen, later in bankruptcy, and ordered·the purchase of 100 shares of Midvale Steel stock. About March 20th Logan & Bryan, brokers in New York and agents for Mason & Owen, by direction of Mason & Owen, bought the shares upon Mason & Owen's account. The certificate was issued, either in the name of Logan & Bryan, or of Mason & Owen, and pursuant to agreement between Logan & Bryan and Mason & Owen was held as security for moneys advanced by Logan & Bryan to pay for the purchase of various stocks, including the Midvale shares, for Mason & Owen. Logan & Bryan knew nothing of a claim by Steer to the stock, and Steer did not know of or consent to the pledge of the stock by Mason & Owen with Logan & Bryan, although he was willing that Mason & Owen should hold the certificate. On March 20th, upon receipt of a confirmation letter from Mason & Owen of the purchase of the 100 shares at $47.75 per share, plus a commission, Steer paid Mason & Owen in full.

Prior to December 6, 1920, the date on which Mason & Owen filed their petition in bankruptcy, Steer notified Logan & Bryan at their Los Angeles office that he owned 100 shares of Midvale Steel stock and demanded the stock, which stood as paid for in his name on the books of Mason & Owen. After petition in bankruptcy was filed the entire debt of Mason & Owen to Logan & Bryan was paid out of the proceeds of the sale of stock pledged with them, but the 100 shares of Midvale stock remained unsold in the hands of Logan & Bryan after payment of all their claims against Mason & Owen. It also appears that during 1920 Mason & Owen used and lost about $55,000 of money deposited with them by their customers, with the result that the firm assets were, to that extent, insufficient to meet large sums which were due their customers.

When Mason & Owen went into bankruptcy, their books showed that the only Midvale Steel stock held by them or Logan & Bryan for Mason & Owen was 100 shares, and according to the books no one except Steer was "long" on Midvale Steel stock, or had any claim against Mason & Owen for Midvale stock, and no claim, except that of Steer, has been filed against the estate of the bankrupts for Midvale stock.

Will J. Thayer, of San Diego, Cal., for appellant.

George H. Stone, of San Diego, Cal., for appellee.

Before MORROW and HUNT, Circuit Judges, and DIETRICH, District Judge.

HUNT, Circuit Judge (after stating the facts as above). It is argued in behalf of the trustee that Steer should be held responsible for the increase of the debt due by Mason & Owen to Logan & Bryan; that such increase was made possible to the extent of $4,775 by the

Midvale shares, which were included in the stock pledged to Logan & Bryan; and that it was Steer's act which enabled Mason & Owen to create the added charge, and that Steer should take the stock "subject to the indebtedness incurred in its purchase."

It is clear to us that the identification of the stock was sufficiently made, for at the time of the bankruptcy Logan & Bryan had in their hands to the credit of Mason & Owen 100 shares of Midvale, and no claimant other than Steer appeared. In Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047, it was said that, where shares of the same kind are in the hands of a broker, being held to satisfy his claim, it is unnecessary for a customer to "be able to put his finger upon the identical certificates of stock purchased for him." "It is enough," said the court, "that the broker has shares of the same kind which are legally subject to the demand of the customer. In this respect the trustee in bankruptcy is in the same position as the broker." The rule in Gorman v. Littlefield, supra, has recently been followed in Re Solomon & Co. (C. C. A.) 268 Fed. 108, and was also recognized in Re Wilson (D. C.) 252 Fed. 639.

Many of the cases cite Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845, where it was held that where a broker holds shares of stock as collateral for the account of a customer upon which the latter is not indebted to the broker, the shares belong to the customer, and the trustee in bankruptcy, having no better right to the shares than the bankrupt, is entitled to the possession of the shares without relation to the fact that the broker has hypothecated the shares. Under such circumstances the customer is entitled to the shares or their proceeds when returned to the trustee, if the loan has been paid by proceeds of other securities pledged therefor.

Application of the law of the cases cited leads to the conclusion that Steer, who was trading with Mason & Owen, having fully paid for his stock, and having, prior to bankruptcy, demanded delivery thereof from Mason & Owen, who were then insolvent, is entitled to the stock and to a delivery thereof.

It appears in the record that the securities held by Logan & Bryan consisted partly of stock purchased on margin and partly of stocks paid for in full to Mason & Owen, and that the proceeds of the securities held on margin were more than sufficient to pay the Logan & Bryan indebtedness in full, and were the only stocks sold by Logan & Bryan to liquidate their claim, and that certain securities were not sold, and survived the liquidation, including 100 shares of Midvale claimed by Steer, and that prior to December 1, 1920, Mason & Owen had been fully paid for all of the other securities, and that no trades were pending at that time. In Re Bolling (D. C.) 147 Fed. 786, after a careful citation of the cases, it was held that, where a stockbroker buys and carries shares of stock on account of a customer on margins furnished by such customer, he holds the same as pledgee, and in the event of bankruptcy the customer is entitled to the stock on payment of the amount due thereon, or to the surplus realized on its sale by the trustee to the exclusion of the bankrupt's creditors. This view was sustained by the Court of Appeals of the Fourth Circuit, in Kean v.

Dickinson, 152 Fed. 1022, 82 C. C. A. 667, where the court adopted the opinion of Judge Waddill.

In the present case the marginal traders do not appear to have paid for their shares; all stocks were sold to pay the indebtedness to the pledgee, and the marginal stocks more than paid the amounts of such debt. Marginal traders, who may have desired to save themselves any loss, could have paid up the amount due on their purchases and demanded their stock, and thus put themselves in a preferred class, on an equality with those who paid for their stock in full before bankruptcy. Such a position is discussed in Re Wilson (D. C.) 252 Fed. 635, and was involved in Hollins' Case, 241 U. S. 523, 36 Sup. Ct. 615, 60 L. Ed. 1143, and generally the rule of decision is that, where stock certificates have been delivered to a broker as security for trades, but without authority to pledge, and where there is no trade pending and the stock has been pledged by the broker, if the loan has been liquidated, and it has not been necessary to sell the stock in order to satisfy the debt for which it was pledged, the customer may recover. See also In re McIntyre, 181 Fed. 955, 958, 104 C. C. A. 419; In re Graff (D. C.) 117 Fed. 343.

It is a fair presumption that Mason & Owen remitted the money paid by Steer to their correspondent, and that they kept 100 shares of Midvale stock on hand at all times for the customer. Gorman v. Littlefield, supra. Mason & Owen did not own and could not rightfully pledge stocks which had been paid for in full. In re Wilson, supra (D. C.) 252 Fed. 649. While it does not appear exactly how much money Mason & Owen owed to Logan & Bryan on March 20, 1920, nor what amount of stocks were pledged in the hands of Logan & Bryan, it does appear that the marginal traders paid Mason & Owen a percentage of the purchase price of their stocks, and that the pledge of the stock so purchased was necessary in order to borrow money to carry the unpaid balances. Thus it is inferable that the credit of these pledged stocks enabled the bankrupts to speculate, and in such speculation they lost. Under such circumstances it would be inequitable to hold that Steer, who paid his money in full and who had no pledge or loan, should be required to pay more, and thus reduce the losses of the marginal traders, who were speculating on the market.

Our opinion being that the order of the District Court was right, the decree will be affirmed.