[L. A. No. 7429. In Bank.—July 2, 1926.]

BLANKENHORN–HUNTER–DULIN CO. (a Corporation), Respondent, v. WILL J. THAYER, Trustee in Bankruptcy, etc., Appellant.

[1] BROKERS—PAYMENT IN FULL FOR STOCK—TITLE OF CUSTOMER—UNAUTHORIZED PLEDGE.—As between a broker and a customer who has paid for stock in full the latter is the owner of the stock and does not impliedly authorize the broker to pledge the security, and the pledging of such stock by the broker is wrongful.

1.  See 4 Cal. Jur. 638.

[2] ID. — TITLE OF MARGINAL CUSTOMER — REPLEDGE OF SECURITY BY BROKER.—As between a broker and a marginal customer the latter is the owner of the stock and the broker is a' pledgee and has a lien on the stock for any advances he may make thereon and has the implied consent of the owner lawfully to repledge the same.

[3] ID.—PAYMENT—RIGHT TO DELIVERY.—As between the broker and his cash customer the latter is entitled to the immediate delivery of the stock, and the marginal customer is entitled to the delivery when he pays the balance of the contract price.

[4] ID.—PREFERRED RIGHT TO FULLY PAID STOCK—PLEDGE—CONTRIBUTION.—A cash customer who has paid the full purchase price of stock, as to the identity of which there is no question, is in a preferred class and is entitled to immediate delivery thereof free and clear of any claims of the trustee in bankruptcy representing the marginal customers as well as the general creditors of the bankrupt broker; and before said marginal customers may insist that said cash customer be held in contribution toward the lien of a pledgee to whom the broker had pledged the stock of said cash customer as well as that of the marginal customers, it must appear that said marginal customers have paid the balance due on their purchases.

[5] ID. — AUTHORITY TO PLEDGE — ASSUMPTION OF RISK. — Where a cash customer pays in full for its stock and does not give to its broker authority to pledge the same, it does not subject itself to that risk and, therefore, occupies a position superior to marginal customers who do not pay in full for their stock, and impliedly authorize a repledge thereof and thus voluntarily assume the risk.

[6] ID.—ACTION TO RECOVER CERTIFICATE—JURISDICTION.—In this action against the referee in bankruptcy of the broker, and also against a pledgee to whom the broker had wrongfully pledged certain stock in a foreign corporation, to recover possession of the certificate evidencing said stock, there was no merit in the contention that the superior court of this state had no jurisdiction of the subject matter.

---

(1) 9 C. J., p. 542, n. 76, p. 545, n. 95.   (2) 9 C. J., p. 544, n. 88. (3) 9 C. J., p. 543, n. 81.   (4) 9 C. J., p. 543, n. 78.   (5) 7 C. J., p. 128, n. 34.   (6) 7 C. J., p. 258, n. 34.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Edwin F. Hahn, Judge.   Affirmed.

---

2.  Stock broker as pledgee, notes, 75 Am. Dec. 315; 74 Am. St. Rep. 471. See, also, 4 R. C. L. 265.

3.  See 4 Cal. Jur. 642.

The facts are stated in the opinion of the court.

Will J. Thayer, *in pro. per.*, for Appellant.

Gibson, Dunn & Crutcher for Respondent.

SHENK, J.—Plaintiff brought this action in claim and delivery to recover the possession of a stock certificate alleged to have been wrongfully withheld by the defendants. Plaintiff obtained judgment for the delivery of the stock against both defendants. The appeal is prosecuted solely on behalf of the trustee in bankruptcy and is on the judgment-roll alone.

It appears from the findings that on and prior to November 15, 1920, Mason & Owen were engaged in the business of stock brokers in the city of San Diego. On or about that date they were employed to purchase for the plaintiff, for cash, ten shares of stock of the Standard Oil Company of Indiana. In execution of the order Mason & Owen directed their correspondents Logan & Bryan, stock brokers having offices in New York City and elsewhere, to purchase for the account of Mason & Owen, as a marginal transaction, ten shares of the said Standard Oil Company stock. On November 15, 1920, Logan & Bryan purchased ten shares of stock of that company on the New York Stock Exchange for $7,100 and immediately notified Mason & Owen of the purchase. The latter in turn notified the plaintiff that the said shares had been purchased as ordered. On November 17, 1920, the plaintiff paid to Mason & Owen the said purchase price of $7,100 plus the usual broker's commission. The whole of said payment was placed among the general funds of Mason & Owen and no part of the same was paid to Logan & Bryan for the purchase of said stock. Prior to said purchase Mason & Owen had an account with Logan & Bryan and through them were trading in stocks on the New York Stock Exchange as marginal traders. The purchase of said ten shares of stock was made by Logan & Bryan as a part of the marginal transactions of Mason & Owen and said shares were paid for by Logan & Bryan out of moneys advanced by them as a loan to Mason & Owen based upon the securities held by them in Mason & Owen's account. At all times

mentioned Mason & Owen had to their credit as a pledge in the hands of Logan & Bryan, a large number of stocks and securities of various kinds belonging to the customers of Mason & Owen which had been purchased by Logan & Bryan for the marginal account of Mason & Owen and their customers, the purchase price of which had been advanced by Logan & Bryan as a loan to Mason & Owen and all of said stocks and securities were held in pledge by Logan & Bryan as security for said loan and the value of said securities was in excess of the indebtedness due from Mason & Owen to them. When Logan & Bryan purchased said shares of stock they did so on the strength of the credit of said pledged stocks and securities and also on the strength and credit of said ten shares of Standard Oil Company stock. The purchase price of the said ten shares was advanced by Logan & Bryan as a part of the loan to Mason & Owen and increased the burden of said loan by the sum of $7,100 but also increased the security held by Logan & Bryan to the amount of the market value of said ten shares. When purchased the said ten shares were credited to Mason & Owen by Logan & Bryan and became a part of the general mass of securities held by Logan & Bryan as a pledge for the payment of the general indebtedness of Mason & Owen to Logan & Bryan and became subject to the lien of Logan & Bryan in that behalf. When Mason & Owen ceased doing business on November 20, 1920, there were to their credit with Logan & Bryan as a pledge stocks and securities belonging to the customers of Mason & Owen, including said ten shares, of the value of $339,156 subject to a lien in favor of Logan & Bryan to secure an indebtedness of $206,054.43 due from Mason & Owen. In executing orders for Mason & Owen and in advancing money on said stocks Logan & Bryan did so in good faith without any knowledge or notice of the rights, if any, of the plaintiff or other customers of Mason & Owen in and to said securities. In dealing with Mason & Owen the plaintiff did not know the methods employed by Mason & Owen in dealing with Logan & Bryan or others in causing orders for stock to be executed on the New York Stock Exchange.

On December 1, 1920, a petition in bankruptcy was filed against Mason & Owen and Will J. Thayer was appointed

and qualified as receiver and trustee in bankruptcy. He was later superseded by George P. Kier, as such trustee, without in any manner affecting this cause. On December 6, 1920, in pursuance of an order of the court in the bankruptcy proceeding, sufficient of said stocks and securities held by Logan & Bryan were sold to cancel the entire indebtedness of Mason & Owen to Logan & Bryan, leaving in the hands of the latter, as a residue of said stocks that had been pledged, a number of securities including said ten shares of Standard Oil Company stock. On December 20, 1920, Mason & Owen were duly adjudged bankrupts. Most of the securities held by Logan & Bryan for the account of Mason & Owen belonged to or were ordered by persons who had not paid in full for said securities to Mason & Owen but were purchased on margin account through Mason & Owen. The value of the securities so purchased on margin was more than sufficient to pay all advances of Logan & Bryan to Mason & Owen on account of said purchases. If the securities so purchased by the marginal customers of Mason & Owen had first been sold to pay off the indebtedness due from Mason & Owen to Logan & Bryan it would not have been necessary to sell any of the stock which the customers of Mason & Owen had paid for in full. After the sale by the trustee in bankruptcy there was a surplus of approximately $100,000 remaining in the hands of Logan & Bryan which was more than sufficient to take care of any stocks or securities so sold which had been paid for in full in the same manner that the said ten shares of stock had been paid for by the plaintiff. Only a small amount of fully paid-for stock was held by Logan & Bryan at the time of the sale of the stocks which had been purchased for Mason & Owen on margin. None of the marginal customers of Mason & Owen have paid into the bankrupt's estate or to Logan & Bryan or to anyone else the unpaid balance due upon the stocks or securities ordered by such marginal customers through Mason & Owen. The ten shares of Standard Oil stock referred to in the complaint were the only shares of Standard Oil stock held by Logan & Bryan under their pledge and the plaintiff is the sole claimant of this particular stock.

As conclusions of law from the foregoing facts the court determined in accordance with the plaintiff's contention that

the plaintiff was the owner and entitled to the immediate possession of the certificate of stock free and clear of any and all claims on the part of the trustee in bankruptcy and of Logan & Bryan and judgment was entered accordingly.

[1] Several propositions seem to be well settled: (1) That as between a broker and a customer who has paid for stock in full the latter is the owner of the stock and does not impliedly authorize the broker to pledge the security. As to the fully paid customer the pledging of his stock by the broker is wrongful (*In re J. C. Wilson & Co.,* 252 Fed. 631); [2] (2) That as between a broker and a marginal customer the latter is also the owner of the stock and the broker is a pledgee (*Richardson* v. *Shaw,* 209 U. S. 365 [14 Ann. Cas. 981, 52 L. Ed. 835, 28 Sup. Ct. Rep. 512, see, also, Rose's U. S. Notes]; *Thomas* v. *Taggart,* 209 U. S. 385 [52 L. Ed. 845, 28 Sup. Ct. Rep. 519]) and has a lien on the stock for any advances he may make thereon and has the implied consent of the owner lawfully to repledge the same (*In re J. C. Wilson & Co., supra*); [3] (3) That as between the broker and his cash customer the latter is entitled to the immediate delivery of the stock (*Duel* v. *Hollins,* 241 U. S. 523 [60 L. Ed. 1143, 36 Sup. Ct. Rep. 615]) and the marginal customer is entitled to the delivery when he pays the balance of the contract price (*In re Mason,* 282 Fed. 202).

[4] With these general rules in mind the respondent contends that having paid the full purchase price, and there being no question of the identity of the stock, it was entitled to immediate delivery free and clear of any claims of the trustee in bankruptcy representing, as he says, the marginal customers as well as the general creditors of the bankrupt. On the other hand the appellant contends that as Logan & Bryan had a lien on the respondent's stock for the full purchase price of $7,100 and as said stock was released from said lien by the sale of other stocks in the hands of Logan & Bryan belonging to the marginal customers of Mason & Owen the respondent must contribute ratably to the discharge of Logan & Bryan's lien. The respondent replies that, being a cash customer, it is in a preferred class with rights superior to those of the marginal traders and that before the latter may insist that the respondent be held in contribution it must appear that they

have paid the balance due on their purchases. It insists that as its stock was wrongfully pledged by Mason & Owen it should have the right to recover before, and if necessary, to the exclusion of the marginal traders whose stocks were rightfully pledged.

We think the contention of the respondent must be sustained. **[5]** It paid for its stock in full. It gave to its broker, Mason & Owen, no authority to pledge the same and consequently did not subject itself to that risk. It therefore occupied a position superior to the marginal customers who had not paid for their stocks in full, and had impliedly authorized a repledge thereof, and thus voluntarily assumed the risk. "As between securities hypothecated with authority and those hypothecated without authority, obviously the latter have the superior equity." (*In re J. C. Wilson, supra,* 650.) The right of contribution does not arise from contract but rests upon principles of equity and natural justice. Concerning this right it was said in *In re Toole,* 274 Fed. 337 [24 A. L. R. 470]: "The principle is that where all are equally liable for the payment of a debt all are bound equally to contribute to that purpose. So that if the stock of A, B, and C is lawfully pledged for the payment of the debt of X, the stock of each is under the common burden, and if X sells the stock of A and B, and leaves unsold the stock of C, the latter must contribute to A and B the excess they have paid above their share. But if, on the other hand, the stock of A is lawfully pledged, while that of B and C is unlawfully pledged, there is no obligation on the part of B and C to contribute, for there is no common burden as between A, on the one side, and B and C, on the other. The principle applies only in cases where the situations of the parties are equal as equality among persons whose situations are not equal is not equitable." The equities of the fully paid customers and of the marginal traders are therefore not equal and as ratable contribution may be enforced only as to those of the same class the marginal traders whose securities were rightfully pledged and who took the risk of a repledge cannot justly complain of the preference given to those whose securities were wrongfully pledged and who took no such risk.

The appellant has been twice subjected to a court order concerning stocks wrongfully pledged by the bankrupt. *In re Mason,* 282 Fed. 202, presents a situation almost iden-

tical with the one at bar. In that case Steer, a customer of Mason & Owen, was declared to be the owner and entitled to the possession of 100 shares of Midvale Steel stock free and clear of any claims on the part of the trustee, appellant herein. Steer had paid for said stock in full and the same had been wrongfully pledged by Mason & Owen. The lien thereon was discharged by the sale of the stocks of the same customers who are now represented by the appellant herein and no part of Steer's stock was sold to satisfy the lien of Logan & Bryan. The principles of law declared and approved in that case are applicable here. It was there said: "Under such circumstances it would be inequitable to hold that Steer, who paid his money in full and who had no pledge or loan, should be required to pay more, and thus reduce the losses of the marginal traders, who were speculating on the market." (*In re Mason, supra*, 205.)

The other case involving this same appellant is *In re Mason & Owen*, 284 Fed. 714, where the right of a customer, who was not indebted to Mason & Owen and whose securities were wrongfully pledged to Logan & Bryan, to recover his securities from the trustee in bankruptcy was confirmed.

An interesting treatise on the subject of the rights and obligations of customers in stock brokerage bankruptcies, with authorities cited in support of the text is found in 37 Harv. L. Rev. 860–888. (See, also, *In re T. A. McIntyre & Co.*, 181 Fed. 960 [104 C. C. A. 424]; *Tompkins* v. *Morton Trust Company*, 91 App. Div. 274 [86 N. Y. Supp. 520], affirmed in 181 N. Y. 578 [74 N. E. 1126].)

The general creditors of the bankrupt are not in position justly to complain of the superior position accorded the respondent for the reason that the $7,100 paid by the respondent went into the funds of Mason & Owen and so far as the record shows is now a part of the bankrupt's estate. The said estate was, therefore, neither increased nor diminished by reason of respondent's transaction in the purchase of said ten shares of Standard Oil stock. Wherefore, as against the marginal customers and general creditors of Mason & Owen the title of the respondent to said ten shares of stock became absolute and it was entitled to the possession of the certificate representing such title as determined by the trial court.

**[6]** The contention of the appellant that the trial court had no jurisdiction of the subject matter of the action is without merit. (*Eyster* v. *Gaff*, 91 U. S. 521 [23 L. Ed. 403, see, also, Rose's U. S. Notes]; *Jaquith* v. *Rowley*, 188 U. S. 620 [47 L. Ed. 620, 23 Sup. Ct. Rep. 369]; *Frank* v. *Vollkommer*, 205 U. S. 521 [51 L. Ed. 911, 27 Sup. Ct. Rep. 596]; *In re Continental Producing Co.*, 261 Fed. 627; *Fidelity etc. Assn.* v. *Citizens Trust & Sav. Bk.*, 186 Cal. 689 [200 Pac. 631].)

The judgment is affirmed.

Richards, J., Seawell, J., Lennon, J., Waste, C. J., and Curtis, J., concurred.

Rehearing denied.