Hillsborough, }
June 28, 1928. }

PHILIP C. LOCKWOOD v. GEORGE A. DICKEY.

*McLane & Davis (Mr. McLane orally)*, for the plaintiff.

*Thorp & Branch (Mr. Branch orally)*, for the defendant.

ALLEN, J. By the contract between R and the plaintiff R's notes to him were taken in payment of C's debt to the plaintiff and in full

assumption of C's debt to the defendant. It included a purpose to give C a standing for credit without liability for its debts to the parties, and the acceptance in pursuance of the agreement of R's notes by the plaintiff was a payment of C's debt to the plaintiff and the assumption by the plaintiff of its debt to the defendant. While the stock transferred to R was to be returned to the plaintiff if his notes were not paid, the debts of C were fully discharged or assumed by the notes. The contract was silent as to any reinstatement of the debts, and in view of the clause calling for return of the stock if the notes were unpaid as the only restoration of the plaintiff's subsisting rights, the implication for a full discharge of the debts is not doubtful. The "credit" which the plaintiff was to continue to "loan" to C, as the contract expressed as its purpose, was only to be secured by the agreement for the return of the stock. Otherwise the credit would be false. Neither the plaintiff's nor the defendant's claim against C was to be a further liability on its part.

While C was not a party to the agreement and might not sue for its breach (*Murch* v. *Railroad*, 29 N. H. 9, 34; *Pittsfield &c. Co.* v. *Company*, 71 N. H. 522, 531, 532), yet its performance by R in giving his notes and C's action taken in reliance on it established a relationship between the plaintiff and C and imposed upon him a direct duty to C to observe it. The duty would appear to arise from common-law as well as equitable principles.

In the common-law aspect, the plaintiff for consideration agreed to release and discharge his rights against C. If the agreement was no more than a gratuitous promise as to C until R's notes were given, yet when they were given, the consideration for the promise became executed and effective. By the agreement it was intended that R's notes when given should accomplish the release and no further action was to be taken to complete it. The release, being beneficial to C, would be held to be presumably accepted by it, and C's conduct leaves no question of its acceptance in fact. A surrender of a property right is analogous to a sale or gift according as it is with or without consideration, in the sense that the owner parts with the right and the party under burden acquires the benefit of the surrender. While there is no transfer of the right, there is by force of the surrender a substitution of a new right to the releasee for the owner's right. As the former is benefited, his acceptance is assumed, although the surrender is made through a stranger as intermediary.

The transaction in this aspect thus appears to have no distinction from cases of transfers made through third persons, although it

may come "under no particular head usually found in the books." *Curtis* v. *Egan*, 53 N. H. 511, 514. *Choses in action* may be the subject of transfer in this way as well as tangible property (*Blazo* v. *Cochrane*, 71 N. H. 585, 586), and the transfer, if a gift, is perfected by delivery to others than the donee, subject to the condition of subsequent acceptance in fact. *Frazier* v. *Perkins*, 62 N. H. 69; *Blazo* v. *Cochrane, supra,* 588. Consistency would seem to show that a surrender of rights pertaining to *choses in action* may be made by a release or discharge of the debtor through third persons as well as directly with the debtor. When one intentionally gives up his rights, a legal rule that the debtor is discharged to their extent accords with justice and common understanding, and is not to be controlled by informalities in the manner of discharge which are not in violation of positive and defined requirements of the law. Under this view, C's acceptance of the discharge gave it the right at law against the plaintiff not to be sued by him and to be protected by him against suit by the defendant, since the agreement, when performed by R in giving his notes, thus provided in its express terms or implications.

From the standpoint of equity, the agreement was made for C's benefit and it was intended that it should know about it and act on the strength of it. The plaintiff and R were a majority of its directors and R was its manager. Action in pursuance of the agreement being taken, the plaintiff was precluded in equity from denial of a direct arrangement with C waiving his rights as a creditor and agreeing that its debt to the defendant should have the same treatment as the debt due him. The plaintiff owed C the duty that no claim against it should be made for the debts, the notes paying the debt due the plaintiff and obligating him to pay the debt due the defendant. C exercising its corresponding right, equitable estoppel operates to place the plaintiff in the same situation he would be in if C had been a party to the agreement between him and R. While "a statement that one foregoes his right does not ordinarily bind him, if made without a legal consideration and not acted upon by the adverse party" (*Duval* v. *Insurance Co.*, 82 N. H. 543, 546), the plaintiff here received consideration and his agreement to modify his rights was acted upon.

But whether C's rights under the agreement after R gave his notes are regarded as arising from common-law or equitable principles, the resulting duty of the plaintiff to C to refrain from demanding payment of his debt and to protect it from demand by the defendant is the same. The defendant's rights were in no way lessened or

adversely affected by the agreement, since he was not a party to it, but the plaintiff's position was materially altered. If the defendant had demanded from C payment of his loan, C was entitled to call on the plaintiff to take care of it. The agreement that C should not have to pay it made the plaintiff an indemnitor or insurer of C against liability for the loan and thus placed the plaintiff in C's shoes in respect to the liability.

As to the defendant, the transaction amounted to the assumption of C's liability to him by the plaintiff. Performing his duty to C, the plaintiff would have paid the defendant what C owed him on his demand for payment. Such payment would have subrogated the plaintiff to the defendant's rights against C, but the plaintiff's duty to C through the operation of the agreement limited and modified the usual rights of subrogation. He could enforce them only so far as the agreement permitted. And his payment would have given him no rights against the defendant because C had no rights to which he might be subrogated.

It follows that to enforce contribution would result in a circuity of actions which would finally leave the parties where they already stand. The plaintiff paid the note on which he and the defendant were liable. If the defendant had paid the plaintiff half of it in contribution, C's payment of its debt to the defendant would have made him whole. But such payment by C would entitle it to reimbursement from the plaintiff and he would be required to pay C what the defendant had paid him by way of contribution. The circle is thus completed. Going oppositely, the defendant's full payment of the note would have entitled him to demand contribution from the plaintiff for half of it. His loan to C made him its creditor to the amount of the other half, and payment by C would entitle it to reimbursement from the plaintiff, who would thus be in his present situation.

In the actual transaction, the plaintiff's payment of the note gave him, considered by itself, a right to contribution. But the defendant had a claim against C for the exact amount of the contribution, and the plaintiff was under obligation to C to hold it harmless against the claim. His right of contribution is thus exactly offset by his obligation to pay C's debt to the defendant, and the equitable result is that the plaintiff's right of contribution was extinguished upon R's performance of his side of the agreement in giving his notes.

Contribution is usually regarded as an equitable right rather than as arising from an implied contract. *Cass* v. *Stearns*, 66 N. H. 301,

302. But whatever its basis, it is predicated upon a common and equal footing of the parties as between each other. "The principle applies only in cases where the situations of the parties are equal as equality among persons whose situations are not equal is not equitable." *Blankenhorn &c. Co.* v. *Thayer*, 199 Cal. 90. The equitable principle of a loss of rights to enforce which would result only in circuity of action (*Moore* v. *Merrill*) 17 N. H. 75; *Rumsey* v. *Sargent*, 21 N. H. 397; *Snow* v. *Fletcher*, 43 N. H. 642, 645, 646) affects rights of contribution as well as other rights. "The thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability." *Wait* v. *Pierce*, 191 Wis. 202, 226. Here the plaintiff's fair share in equity of the liability on the note is all of it, since as between the parties half of it was his debt and payment of the other half was in discharge of his obligation to pay C's debt of equal amount owed the defendant.

In summary, it is well settled that a contract between A and C for A to pay C's debt to B may be enforced by B against A, although C becomes insolvent, on the principle that A, having assumed the debt, in equity becomes the principal obligor as between him and C, and B may so treat him. *Toner* v. *Long*, 79 N. H. 458, 460, 461, and cases cited. The defendant's refusal to make contribution was an acceptance by him of the plaintiff as his principal debtor in place of C. The contract between the plaintiff and R, although C was not a party to it, inured to its benefit, and after R's notes were given C had the right to enforce it. It placed the plaintiff in C's place as to its liability to the defendant. The plaintiff owed the defendant all the defendant owed him. Avoidance of circuity of action is equitably accomplished by the loss of the right of contribution.

The renewal of the note subsequently to the agreement and when C had become insolvent makes no difference. The defendant as a maker had no defence against the payee and the renewal merely maintained his obligation as a maker. Entitled to hold the plaintiff to payment of C's debt, while the original note was in force, he was also thus entitled during its renewal. The renewal made no change of relationship between the parties, and the defendant lost no rights against the plaintiff by signing it.

*Bill dismissed.*

SNOW, J., was absent: BRANCH, J., did not sit: the others concurred.