[Civ. No. 25481. Second Dist., Div. Two. Apr. 26, 1962.]

Estate of ARTHUR E. WITTENBERG, Deceased. UNION BANK AND TRUST COMPANY OF LOS ANGELES, as Special Administrator and Coexecutor, etc., et al., Petitioners and Appellants, v. REGINA LOEB et al., Contestants and Respondents.

Charles J. Katz and Arnold M. Shane for Petitioners and Appellants.

Backrack & Wilson, Low & Stone and Blau & Schwartzman for Contestants and Respondents.

HERNDON, J.—Appeal by the Union Bank, as special administrator, Allen E. Fisher and Union Bank, as coexecutors, and Charles J. Katz, as attorney for the special administrator and coexecutors, from that portion of an order and decree settling the first and final account and decreeing distribution of the Estate of Arthur E. Wittenberg, deceased, which fixes statutory commissions and attorney's fees.

At the time of his death on July 16, 1957, the testator maintained margin accounts with two stockbrokerage houses pursuant to a "customer's agreement" with each. The total appraised value of the securities carried in both the accounts was $434,361.13. The total of his indebtedness to the two brokers amounted to $179,897.53. The balance of the estate was comprised of personal property of relatively slight value. The certificates for the shares carried in the margin accounts were not issued in the name of the decedent, but were handled

in street name; the decedent never had possession of the certificates.

The agreement in each case set out the rights and duties of the testator and broker, certain of which are pertinent to an analysis of the problem here presented. Among other things, it provided that: *all securities carried for the customer by the broker or in its possession for any purpose should be subject to a general lien for the discharge of all obligations of the customer to the broker*; the securities might be pledged or repledged by the broker as security for general loans of the broker; the customer should maintain at all times margins satisfactory to the broker; *and in the event of the death of the customer, or at any time for its protection, the broker might sell the securities, or any part thereof, and credit the customer's account with the proceeds.*

On July 23, 1957, Union Bank was appointed special administrator with the express power and authority to take possession, sell and dispose of all or any part of the property of the estate, including all shares of stock, and to close out any accounts maintained by the testator with any stockbrokers ''all in such manner and upon such notice as the Court may from time to time hereafter fix.''

Upon petition of the bank, the court made an order on August 2, 1957, authorizing the sale of certain securities carried in the accounts. The brokers thereafter sold the securities listed in the order and retained the proceeds, applying them to the indebtedness and interest accrued thereon. Because of drops in the stock market, the sale left a balance of about $3,000 owing to the brokers.

On October 18, 1957, letters testamentary were issued to the bank and Allen E. Fisher named as coexecutors in the testator's will, and on November 12, 1957, upon their petition, the court made a second order authorizing the sale of certain additional securities carried in the accounts. The brokers sold the securities listed in the order, applied the proceeds against the balance of the indebtedness and interest accrued subsequent to the death of testator, and remitted the excess to the coexecutors.

A third and final sale of the remaining stock was made and the accounts closed to liquidate the estate for distribution pursuant to an order which was made by the court on December 18, 1958, upon petition of the coexecutors with the consent of the beneficiaries.

Pursuant to each sale, a certified copy of the court order

and a release from the inheritance tax authorities were transmitted to the brokers. Neither the petitions for the orders nor the orders made reference to payment of the balances owing to the brokers. No authorization was given by the special administrator or coexecutors to the brokers to retain the proceeds of the sales to pay the indebtedness. No creditors' claims were filed by the brokers.

In their petition for statutory commissions, appellants sought approval of the sum of $7,273.86 to be apportioned by the court between the bank and Mr. Fisher and an equal amount as attorney's fees for Mr. Katz who performed all of the legal services for the administration of the estate under both the special administrator and the coexecutors. The bank and Mr. Katz also sought $3,500 each as compensation for extraordinary services. The amount of the statutory fees claimed was computed in accordance with the schedule outlined in Probate Code, section 901, using the sum of $392,923.68 as the base amount of the estate accounted for. This figure included the full value of all of the stocks, which had also been shown in the inventory and appraisement.

Respondents, Regina Loeb, Ella LaRue, and the State of Israel, who are legatees under the will, filed objections to the amounts claimed for statutory fees and commissions, contending that only the net amount received from the sale of the stock should be included in the estate accounted for inasmuch as neither the special administrator nor the coexecutors ever had possession of the stocks or the proceeds therefrom, had no right to such possession, and did not pay the indebtedness to the brokers as creditors' claims against the estate.

The court below sustained the objections. It concluded: the relationship between the testator and stockbrokers was that of pledgor and pledgee; the brokers were secured creditors who held the stock certificates as security for the testator's indebtedness to them under the margin accounts; and the special administrator and coexecutors were accountable only for the balance remitted to them by the stock brokers. It deducted the total sums retained by the brokers, including interest, from the sum claimed to be the amount of estate accounted for. Basing the computation of the fees on a reduced sum in the amount of $212,362.36, it fixed the statutory fees and commissions at $4,565.43 each, allowing $1000 to Fisher, $3,565.43 to the bank and $4,563.43 to the attorney. It awarded extraordinary fees of $3,500 each to the bank and to the attorney.

The sole question presented is whether, in view of the facts in this case, the total value, or merely the net equity of the testator in the securities, should be included in the estate accounted for in computing the statutory fees and commissions.

Probate Code, section 571, requires the executor or administrator to take into his possession all of the estate of the decedent. Probate Code, section 600, requires him to file an inventory and appraisement of the estate ''which has come to his possession or knowledge. . . .'' Section 920 provides that the executor or administrator is ''chargeable in his accounts with all of the estate of the decedent which comes into his possession.'' Sections 901 and 910 provide that ''the amount of estate accounted for'' is the basis for the computation of statutory commissions and attorney's fees.

It appears that no appellate court in this state has passed on the precise question whether the executor or administrator and the attorney for an estate are entitled to commissions and fees computed on the gross value of securities held in a margin account and pledged to secure indebtedness of the decedent under an agreement of the type here involved.

On its facts *Estate of Boggs,* 33 Cal.App.2d 30 [90 P.2d 814], is perhaps closest to the case at bar. In that case, at the time of his death the decedent owned certain real property and shares of stock of the total value of $443,745 which were held by a bank under a deed of trust and pledge agreement to secure an indebtedness of the decedent in excess of $500,000. Under the pledge agreement the bank collected all income from the stock and under the deed of trust all rents from the realty. The bank, as a secured creditor, sold stock both before and after the qualification of the executrix. After the bank applied the proceeds of the stock sales to the indebtedness, an unpaid balance remained. The executrix came into possession of other property of a value of $3,000.

Creditors appealed from an order allowing an advance on commissions of $1,000 to the executrix and $1,000 as fees to the attorney on the ground that the allowances were excessive. The order was *reversed.* ▮▮▮ The court said (p. 32): ''It will be noted that the executrix is required to set forth all of the estate which shall have come to her knowledge but she is chargeable in her account with only that part of the estate which may have come into her possession. ▮▮▮ In demanding fees for her services she is entitled to payment based upon the value of the estate which is 'accounted for.' ''

■ A careful reading of the customer's agreement between the testator and each broker leads us to the conclusion drawn by the learned trial judge that the legal relationship of the testator at the time of his death with each broker was that of pledgor-pledgee. While the agreement indicates that the broker was to act as agent of the testator in stock transactions, it also provides that all stock in the possession of the broker or carried in the account was subject to a lien for the discharge of the obligations of the testator to the broker.

The agreement appears to have all the characteristics of the usual and standard form of contract under which margin stock accounts are maintained. ■ It has been generally held in respect to margin accounts that the relationship between the customer and broker is more than a mere agency. In connection with the acquisition of the stock it is that of principal and agent (*Cashman* v. *Root,* 89 Cal. 373, 383 [26 P. 883, 23 Am.St. Rep. 482, 12 L.R.A. 511]); but once the stock comes into the hands of the broker, he thereafter holds it to secure amounts owing to him, and the relationship then becomes that of pledgor-pledgee. (*Blankenhorn-Hunter-Dulin Co.* v. *Thayer,* 199 Cal. 90, 95 [247 P. 1088, 48 A.L.R. 797]; *In re Mercantile Trust Co.,* 210 N.Y. 83 [103 N.E. 884]; 48 A.L.R. 797; 9 Cal.Jur.2d 208-209.)

Probate Code, section 774, provides expressly for the sale of "an interest in personal property pledged," partnership interests and choses in action in the same manner as other personal property. ■ The statute's choice of the phrase "an interest in" does not distinguish between the interest of a pledgor and that of a pledgee. It does, however, distinguish the *interest* of a decedent in pledged property from the pledged property itself. Its classification with partnership interests and choses in action also tends to indicate that the interest therein, rather than the specific property, is to be considered an asset of the decedent's estate. ■ In line with this reasoning, it has been held that the personal representative of a deceased pledgor may not take possession of pledged property itself, but he may sell the interest of the estate therein subject to the pledge before the pledgee has taken steps to enforce his lien. (*Bell* v. *Mills* (9th Cir. 1903) 123 F. 24 [59 C.C.A. 104].)

■ In the case at bar, the testator at the time of his death did not have possession of the stock; nor could he obtain possession so long as there was an outstanding indebtedness owing to the brokers. The special administrator and coexecutors had

no greater right. It therefore cannot be said that the administrator or coexecutors had constructive possession of the stock in the hands of the brokers. They held only the intangible interest of the testator in the pledged property. ▩ The very essence of the pledgor-pledgee relationship is that possession and the right to possession is in the pledgee. ▩ On sale of the stock, the brokers retained the amounts owing to them. These facts belie any possible claim that they waived their pledges. To accept the theory of appellants that the special administrator or coexecutors assumed control or had constructive possession of the stock is to distort the operative facts and the resultant legal relations.

*Estate of Lampman,* 15 Cal.2d 212 [100 P.2d 488], is another decision which lends strong support to the conclusion of the trial court. In that case the testator, at the time of his death, was the owner of an apartment house appraised at $42,500 and recently acquired in trade. It was subject to a trust deed which had never been signed by the decedent, and upon which an unpaid balance of $38,000 remained at the time of his death. The executrix took possession of the apartment, managing it through a paid manager. The trust deed secured no personal obligation of decedent and no claim was filed in the estate. During the course of administration, the property was sold for $47,500. The purchaser assumed the payment of the trust deed and paid the executrix the difference between the purchase price and the amount due on the trust deed. The actual amount of cash paid to the executrix from this sale was $14,003.

The probate court held that only the equity of $14,003 could be included for purposes of computing the statutory commissions. The executrix appealed. In affirming the judgment the Supreme Court pointed out that while the factor of possession by the executrix was important, it was not the sole test. ▩ The court stated that the principle underlying all of the cases dealing with the question of the amount of the estate accounted for by an executor or administrator is the premise that the measure of the executor's responsibility is the measure of his compensation. The court further stated at page 219:

"We are satisfied that the determinative factor in the instant case is whether or not the executrix herein was chargeable with, or responsible for, the total value of the apartment house and furnishings, as evidenced by the sale price of $47,500, or only for the actual sum received by her, that is

to say, $14,003. We think there is no doubt that she was only chargeable with the $14,003 and that, therefore, the probate court did not err in refusing to allow her commissions based upon the total sale price of the property.

"In this connection it may be noted that both the executrix and the attorney herein received additional fees for extraordinary services in connection with the management and sale of the apartment house and the administration of the estate. This power of the court to grant additional fees for extraordinary services is one which may be used to equalize any injustice which may result when the estate upon which the commissions are allowed is small, and the services involved are extra onerous."

 Other decisions indicating the correctness of the probate court's ruling that the computation of statutory fees should be based upon the equitable interest of the decedent where stock margin accounts are carried under agreements of the type here involved are *In re Mercantile Trust Co.*, 210 N.Y. 83 [103 N.E. 884] and *Hitchcock* v. *Mosher*, 106 Mo. 578 [17 S.W. 638]. Both these cases are cited with apparent approval in *Estate of Boggs, supra,* 33 Cal.App.2d 30 at page 33. (See also *Estate of Rowe,* 66 Cal.App.2d 594, 607-608 [152 P.2d 765].)

Appellants rely upon the decisions in *Estate of Pease,* 149 Cal. 167 [85 P. 149], and *Estate* of *Reinhertz,* 82 Cal.App.2d 156 [185 P.2d 858, 186 P.2d 755]. In both these cases the decedent owned real property subject to mortgages securing the indebtedness for which the decedents were personally liable. Creditors' claims against the estates, covering the mortgage indebtedness, were filed. The personal representative took possession of the property in each case. In each case the property was sold during administration. The escrow agent paid off the mortgage indebtedness from the proceeds of sale and remitted the balance to the executor.

It was held in these two cases that statutory commissions and fees should have been allowed on the entire amount for which the property was sold. Both decisions emphasized the element of possession and the fact that claims had been filed against the estates on indebtedness for which the decedents were personally liable. In these cases the escrow holder who paid the mortgagee-claimant was regarded as the agent of the executor. The vital distinctions between these cases and the case at bar are obvious.

A careful analysis of the several decisions above reviewed

indicates that among the important elements favorable to the probate court's determination of the "estate accounted for" as the basis for computing the statutory fees in this case are the following: (1) Here possession of the securities was held by the broker-pledgee. This factor is important under section 920 of the Probate Code in establishing the estate "chargeable" to the executor or administrator. (2) The securities were sold by the pledgee during administration to discharge indebtedness pursuant to the provisions of the margin account agreement. (3) The funds derived from the sales of securities in this case were handled entirely by the broker acting in the capacity of pledgee. This is entirely different from the handling of the funds by an escrow holder acting as agent for the executor. The direct application of the proceeds of sales by the pledgee to the debt. is similar to the application of the proceeds of sales made in *Estate of Boggs, supra.* (4) In the instant case no creditor's claim was filed by the broker-pledgee as was done by the mortgagees in the cases relied upon by appellants.

The applicable statutes clearly state that the executor is chargeable in his accounts with all of the estate that comes into his possession. As stated in *Estate of Simmons,* 43 Cal. 543, 550-551, quoted in *Estate of Johnston,* 47 Cal.2d 265, 272-273 [303 P.2d 1]: " 'We are of the opinion that an administrator cannot be said to have "accounted for" an estate, in the sense of the statute, unless he shall first have taken it into possession. . . . He may, and doubtless would, incur a responsibility, should he fail to take it into possession when he lawfully might, if by such failure it should become ultimately lost to those entitled to its benefits; but as affording a basis for the allowance of commissions, the value of the estate which has been taken into possession, and having been in possession has been accounted for, is alone regarded.' (See also *Estate of Lampman,* 15 Cal.2d 212, 215 [100 P.2d 488]; *In re Ricaud,* 70 Cal. 69, 71 [11 P. 471]; *Estate of Boggs,* 33 Cal.App.2d 30, 32, 33 [90 P.2d 814].)' '

The portions of the order and decree settling first and final account, decreeing distribution and fixing statutory commissions and attorney's fees, herein presented for review, are affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 20, 1962.