[Civ. No. 14535. Second Dist., Div. Three. Oct. 31, 1944.]

Estate of MARGARET RACKLE ROWE, Deceased. RHEA McMANUS, Individually and as Executrix, etc., et al., Appellants, v. VICTOR A. NEWMAN, as Administrator With the Will Annexed, etc., Respondent.

A. E. Coppleman and Louis Bean, Jr., for Appellants.

Pearce, Campbell, Bryan & Norcop, Albert D. Pearce and C. V. Caldwell for Respondent.

WOOD (Parker), J.—This is an appeal from an order settling a final account, interpreting a former order regarding fees for attorneys and executrix, and directing disposal of assets.

Margaret Rackle Rowe, the decedent, owned two parcels of real property which will be referred to herein as the Slauson Avenue property and the residence property. In April, 1928, she gave a general power of attorney to her brother, Herman Rackle. During her lifetime, Herman conveyed both parcels of property to John H. and Hazel Chambers. They placed a $10,000 mortgage and a 3 years' lease on the Slauson Avenue property, and later conveyed both parcels to Herman Rackle and his wife. Herman and wife placed a $6,000 trust deed on the residence property. At the time the power of attorney was given, the Slauson Avenue property had an encumbrance

of $3,000 on it, and the residence property had an encumbrance of $3,700 on it. Herman transferred decedent's bank account of approximately $2,700 to himself. Herman and wife conveyed both parcels of real property to one Gerde, who then reconveyed both parcels to Herman and wife, but the deeds were not recorded.

Adelaide R. McManus, a sister of decedent, was appointed executrix in 1930. She employed A. E. McManus, her husband, and C. V. Caldwell, attorneys at law, to represent her in seeking to recover for the estate the property which had been transferred under the power of attorney. At the time of such employment there were no assets in the estate, and the agreement between the executrix and the attorneys was that the employment was "on the basis of a contingent fee without any definite arrangement as to what percentage or amount they should be paid for their services," and that the attorneys were not to get anything unless they succeeded in collecting assets of the estate.

Under that employment the attorneys commenced an action to set aside the conveyance of the two parcels of real property, to recover the proceeds of the new loans upon the two parcels, and to recover the $2,700 bank deposit. The attorneys spent five days in preparing for the trial of that action, eight days in the trial (both attorneys being in court), and five days in preparing briefs after the case was submitted. By the judgment therein the deeds were set aside and an accounting was ordered as to the money received by Herman and his wife. The matter of the accounting was consolidated with the trial of an action by Herman and his wife upon their rejected claim against the estate for $11,502.99 for services rendered and money advanced. The attorneys for the executrix spent 2 days in preparing for that trial, and 3½ days in the trial. The judgment in the matters of the accounting and the claim was that the executrix recover $3,137.86 and $33.50 costs from Herman and wife, after allowing them $2,892 on their claim. It appears therefore that under the employment upon a contingent fee basis (relative to recovering the property) the attorneys were in court 11½ days, and were performing services outside of court for 12 days.

Before rendering the services above mentioned, the attorneys rendered other legal services hereinafter mentioned under employment by Adelaide R. McManus, as executrix. Her-

man Rackle petitioned for the probate of a purported will of decedent dated April 11, 1928, in which he was named executor. Mrs. McManus, through said attorneys, filed a contest of that will, and petitioned for the probate of a purported will of decedent dated December 5, 1923, in which she was named executrix. Herman filed a contest of that will. The attorneys represented her in the trial of the contests and spent 11¼ days in court and six days in preparing for trial. The result of the trial was that the will of December 5, 1923, was admitted to probate; that Mrs. McManus was appointed executrix; and it was found that the purported will of April 11, 1928, was obtained by the undue influence of Herman. Thereafter Herman petitioned for the probate of a purported will of decedent dated April 3, 1928. Mrs. McManus, through said attorneys, filed a contest of that will. The attorneys spent 2 days preparing for the trial. The petition was dismissed by Herman. It appears that, under said prior employment (relative to the contests), the attorneys were in court 11¼ days, and were performing services outside of court for 8 days.

The attorneys were also in court one day in connection with the examination of Herman Rackle as to the location of the assets of the estate.

The total time spent by the attorneys in the litigation to recover the property and in the contests was 23¾ days in court, and 20 days outside of court. The attorneys also rendered legal services in refinancing the loan and in renewing the lease upon the Slauson Avenue property, but the time spent in such service is not shown in the record.

On July 21, 1932, the executrix filed an account in which she recited, among other things, the matters hereinabove stated concerning the will contests and the litigation to recover the property, and asked that an order be made ''fixing the fees of your petitioner,'' and ''fixing and *establishing* the fees of her said attorneys.'' (Italics added.)

On August 10, 1932, the court made an order that said account be approved, ''and *that 40% of estate be allowed to attorneys as fees and costs* and $600.00 to said executrix as fees for services rendered said estate.'' (Italics added.)

The account showed that the cash on hand was $3.05. The inventory and appraisement, on file at the time of the hearing on the account, showed that the assets and appraised value thereof were: Slauson Avenue property, ''$17,000''; resi-

dence property, "no equity"; personal effects and household furniture, *"not appraised"*; a judgment against Herman Rackle for $630.05 costs, "no value"; and a claim against Herman Rackle and wife for money had and received, "no value." (Italics added.) The inventory did not recite that there was an encumbrance of approximately $12,200 against the Slauson Avenue property, and the appraisal made no reference to the encumbrance.

On February 1, 1932, before the account was filed and before the order allowing "40% of estate" as attorneys' fees was made, the court made an order authorizing the executrix to refinance the Slauson Avenue property by borrowing $12,200 and securing the payment thereof by a trust deed for that amount upon the Slauson Avenue property, and by applying the proceeds of the new loan in satisfaction of the $10,000 mortgage, unpaid interest and delinquent taxes. When the court made said last mentioned order it also empowered the executrix to assign the rents from the property to the holder of the trust deed to be applied in payment of the new obligation. The rents were so assigned and the property was held under that financing arrangement from 1932 until it was sold in December, 1942. After so applying the rents which accrued during those years, there was an unpaid balance of $7,375 on the trust deed when the property was sold. The Slauson Avenue property was reappraised on December 1, 1942, at $11,500, subject to said trust deed on which there was an approximate balance of $7,375. On December 10, 1942, said property was sold for $12,500. After the balance due on the trust deed and the expenses of the sale were paid by the escrow holder from the purchase price money, the net amount received by the estate from the escrow was $4,217.04.

On August 13, 1937, C. V. Caldwell, one of the attorneys for the executrix, assigned his interest in the claim for attorneys' fees to A. E. McManus, the other attorney for the executrix. On June 9, 1939, the court accepted the resignation of Adelaide R. McManus, the executrix, and appointed an administrator with the will annexed. Thereafter and prior to the time the administrator filed his final account, Adelaide R. McManus and A. E McManus died.

On June 14, 1943, the administrator with the will annexed, through his attorneys, Evans, Pearce & Campbell, filed his final account and petition for distribution, wherein he sought "the interpretation and construction of the Court in the mat-

ter of the former allowance of 40% of the estate'' to McManus and Caldwell. The administrator alleged therein that the only asset which came into his hands was the Slauson Avenue property; and that after the sale of that property the cash balance on hand (in a bank) was $4,611.07. (The findings state the balance was $4,155.57.) He also alleged that he was ''uncertain as to whether or not the 40% allowance, fixed by said Order, applies to the then present value of said estate, to-wit $17,000, or should be applied to the more recent value of $12,500, as evidenced by the sale of the property heretofore set out''; and that until said order is interpreted he ''cannot know what final disposition should be made of said estate.'' He alleged further therein that it was the contention of the ''Executor of the Estate of A. E. McManus, deceased,'' that ''said order should be interpreted on the basis of 40% of the $17,000, which amount would be the sum of $6800.''

The will gave $1.00 to each of seven persons, and gave the residue in equal shares to Elizabeth Wedler, Ada McManus (also known as Adelaide R. McManus), and Elizabeth Burgess.

Objections to said account and petition were filed by Rhea McManus, who was the daughter of Adelaide R. McManus, deceased, and also the executrix of her will. One of the objections was that the interpretation of the order of August 10, 1932, as requested by the administrator, to the effect that the attorneys should receive 40 per cent of the gross appraisal value or gross selling price without deducting the amount of the encumbrance, was not the proper interpretation of that order for the reason that under such an interpretation the total estate would be turned over to the attorneys. She asserted further therein that the order should be interpreted to mean 40 per cent of the net estate.

The trial court found that the only property belonging to the estate was $4,155.57 which was on deposit in a bank; that an order was made on August 10, 1932, ''decreeing that 40% of said estate be allowed and fixed as the contingency fee of McManus & Caldwell'' for costs advanced and attorneys' fees in the litigation to recover the property of the estate, in the will contests, and in the other extraordinary services rendered by them; that at the time said order was made ''the then appraised value of said estate as shown by the Inventory and Appraisement . . . was the sum of $17,000, and in response to the specific request of the present Administrator with-the-

Will annexed for an interpretation of said Order, the Court further finds that said Order should and would allow to said attorneys 40% of the then present appraised value of said estate, or the amount of $6,800, and the Court now determines and finds that said Order of August 10, 1932, fixing attorneys' fees does amount to an allowance of $6,800 to said attorneys McManus and Caldwell''; that Adelaide R. McManus did not receive the $600 allowed to her by the order of August 10, 1932, for her services as executrix; that the total of the fees for the attorneys and the executrix, as fixed by said order of August 10, 1932, was $7,400; that said unpaid fees of the executrix and attorneys should be ''pro rated on the basis of the percentage the total claims bear to the cash now on hand . . . and to that end the Administrator . . . is ordered . . . to pay out of the remaining cash on hand . . . the sum of $336.94 to the Executrix of the Estate of Adelaide R. McManus, deceased . . . and to the Executor of the Estate of A. E. McManus, deceased, the sum of $3818.63''; that $150 should be paid to the attorneys, Evans, Pearce & Campbell, for extraordinary services rendered by them in connection with the sale of the property, that $100 should be paid to them for services in connection with the closing of the administration of the estate, and that the said $250 should be deducted from ''the $3818.63 Attorneys' fees herein ordered to be paid to the Estate of A. E. McManus, deceased''; and that the estate was insolvent, and there were no funds with which to pay the specific legacies totalling $7.00, and there was no ''residuum out of which to pay the residuary legatees.''

The court ordered and adjudged that the account was approved; that $250 be paid to Evans, Pearce & Campbell; that $3,568.63 be paid to the executor of the will of A. E. McManus, deceased; that $336.94 be paid to the executrix of the will of Adelaide R. McManus, deceased; that the estate was insolvent and there was no property out of which to pay the specific legacies or to pay the residuary legatees.

The appellants are: Rhea McManus, who is the daughter of Adelaide R. McManus, and the executrix of the will of Adelaide R. McManus, deceased, who was a residuary legatee under the will of the testatrix herein; and Elizabeth Wedler Clark, who is a niece and a residuary legatee under the will of the testatrix herein. Appellants contend that the order of August 10, 1932, allowing ''40% of estate'' as attorneys' fees, was void, and that, consequently, the interpretation and

effect given to said original order by the order herein was void.

Section 910 of the Probate Code, in effect in 1932 and thereafter, provided that: "Attorneys for executors . . . shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed . . . to executors and administrators; and such further *amount* as the court may deem just and reasonable for extraordinary services." (Italics added.) Section 911 of the Probate Code, in effect in 1932 and thereafter, provided that: "Any attorney who has rendered services to an executor or administrator, at any time after six months from the issuance of letters . . . may apply to the court for an allowance upon his fees; and on the hearing the court shall make an order requiring the executor . . . to pay such attorney out of the estate such compensation . . . as the court shall deem proper, and such payment shall be made forthwith." The order of August 10, 1932, did not allow or fix a definite amount of compensation, as required by the Probate Code, to be paid forthwith or to be paid when there were available funds in the estate from which the obligation might be satisfied. The provision, "40% of estate," was indefinite and uncertain, and was a formula or measure for determining the amount of the fee to be allowed at some future time. In the *Estate of Mc-Donald* (1940), 37 Cal.App.2d 521, at p. 525 [99 P.2d 1115], it was said: "It seems obvious from the wording of these sections of the Probate Code [referring to sections 910 and 911 above mentioned], however, that the allowance for attorneys' fees to be made by the court under the code provisions should be a definite, fixed and certain cash allowance, and not a percentage of the value of assets recovered or to be recovered for the estate, particularly of assets which are not yet finally a part of the estate and which might not become or remain a part of the estate, which was the situation in the instant case at the time the order was made. The order appealed from did not actually allow or fix a fee or an amount of compensation as provided in sections 910 and 911 of the Probate Code, but rather adopted a formula or gauge or measure for determining the amount of the fee to be allowed at some future time. . . ." In that case the order regarding attorneys' fees was in substance that the attorneys were entitled to be allowed and paid 35 per cent of the net value of all properties and monies, together with the accruing rents, issues and

profits thereon, and accruing oil royalties, then recovered or which might be recovered. The principal part of the estate therein was a judgment which directed that the estate recover certain oil producing lands and accruing oil royalties therefrom, and from which judgment an appeal was pending when the order allowing fees on a percentage basis was made. It appears therefore that the order in that case allowing fees on a percentage basis was uncertain for the reasons that the amount of the estate upon which the percentage was to be computed was unknown at the time the order was made—the judgment for the recovery of the property not being final, and the amounts of the accruing rents and oil royalties being variable. Respondent asserts that one of the respects in which that case is distinguishable from the present case is that "the amount of fees there allowed was conditioned upon the happening of a future uncertain contingency," and "Such is not the fact in the case at bar."

In the case at bar the amount of the "estate" upon which the percentage was to be computed was also uncertain and unknown, when the order allowing "40% of estate" as fees was made, for the reasons that: (1) the personal effects and household furniture which were included in the inventory were not appraised; and (2) the rental of $150 per month was being received monthly from the Slauson Avenue property. The amount of the attorneys' fees in the present case, upon the percentage basis, also depended upon contingencies which were: (1) that the personal effects and household furniture, which were not appraised, might have been appraised; (2) the judgment against Herman Rackle for $630.05 might have been found to be of some value before the estate was closed; (3) the claim against Herman Rackle and wife for money had and received might have been found to be of some value before the estate was closed; and (4) it was probable that the rent from the Slauson Avenue property at the rate of $150 per month would be received until the estate was closed or until the lease was terminated. That it was contemplated that the estate would not be closed for a considerable period of time after the order for fees was made is indicated by the fact that a new financing arrangement for the Slauson Avenue property had been made whereby the rents were to be applied to reduce the $12,200 trust deed obligation. The fact is that a petition to close the estate was not filed until the expiration of more than 10 years after the order for fees upon a percentage

basis was made. It is also a fact that the claim against Herman Rackle and wife, upon which claim a judgment against them for $3,171.36 was obtained, was assigned by Adelaide R. McManus, as the executrix, to herself as an individual in satisfaction of her claim against the estate for costs advanced in the sum of $630.05. That claim was therefore found to be of some value.

It appears that it was the desire of the attorneys that their fees be fixed upon a percentage basis and depend upon future uncertain events. They had a contract with the executrix for a contingent fee dependent upon success in collecting assets of the estate. Among other services rendered by them, they had obtained a judgment for $3,171.36 against Herman and his wife, but no part of it had been collected when the petition for attorneys' fees was prepared by them, or when the order allowing fees was made. The petition for fees asked that an order be made "fixing" the fees of the executrix, and "fixing and *establishing*" the fees for the attorneys. (Italics added.) The fees for the executrix were not fixed upon a percentage basis, but were fixed in the definite amount of $600. The fees for the attorneys were not fixed in a sum or amount of money, but were "established" as "40% of estate," at a time when the value of the estate was not known, as above shown, and when it was known that the estate would increase monthly upon the receipt of the rent, and when it was reasonable to assume that the estate would not be closed for a considerable period of time. It was reasonable to assume that the attorneys believed, inasmuch as they spent 5½ days in obtaining the judgment against Herman and wife, that the estate might be increased further as a result of some payment upon that judgment.

The order herein allowing the fees for extraordinary services upon a percentage basis was erroneous. Our opinion is not to be construed as holding that an executor or administrator may not, with the approval of the court, make a contract upon a contingent fee basis for legal services to be rendered in the future. That question is not involved in the present appeal.

Respondent contends that even if the order allowing such fees was erroneous it was voidable and not void, since the court had jurisdiction of the subject matter and of the parties. He contends further that even if such order was er-

roneous and voidable it became a binding and incontestable order, since no appeal was taken therefrom. He cites cases wherein the distinction is made between a voidable judgment resulting from the erroneous exercise of jurisdiction and a void judgment resulting from lack of jurisdiction, and wherein the holdings are to the effect that the erroneous exercise of jurisdiction does not render a judgment void. The rule applicable here, for the determination of whether the order of August 10, 1932, was void or voidable, is stated in the three cases next hereinafter mentioned. In *Michel* v. *Williams* (1936), 13 Cal.App.2d 198, the court said at page 200 [56 P.2d 546], in quoting from another case: " 'Proceedings outside the authority of the court, or in violation or contravention of statutory prohibitions, are, whether the court have jurisdiction of the parties and subject-matter of the action or proceedings, or not, utterly void.' " The court also said on that page: " 'The case of . . . [a Federal case] involved a collateral attack on a judgment, and the court after referring to the rule as generally stated in the books, namely, that the judgment of a court having jurisdiction of the parties and the subject-matter of the action is conclusive and cannot be collaterally called into question, said: "That may be conceded, but the question is, did it have jurisdiction to enter the particular decree and judgment that it did enter? As we have before seen, we reach the conclusion that the particular judgment could not be entered; and it is a well-settled principle that, although a court may have jurisdiction of a case, yet, if it appears from the record that it did not have jurisdiction to enter the particular decree and judgment, it may be collaterally attacked." ' "

In *Abelleira* v. *District Court of Appeal* (1941), 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], the court said at page 288: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . . But in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. . . . Here [in a proceeding in prohibition] it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief. . . ."

The case of *Texas Co.* v. *Bank of America etc. Assn.* (1935),

5 Cal.2d 35 [53 P.2d 127], involved a collateral attack upon the validity of an order authorizing a special administrator to execute a lease. The special administrator therein had been appointed without compliance with the statutory provisions as to notice. In sustaining the collateral attack therein, the court said at page 39: "Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. . . . Although jurisdiction over the subject-matter of the estate authorized the appointment of an administrator, yet, since various provisions of the Code of Civil Procedure provided the exclusive method for the exercise of such authority, an appointment contrary to the applicable provisions would be in excess of the court's jurisdiction." The court said further therein at page 41: "If the record discloses that the court had no jurisdiction to make the order of appointment, then it is void and can be attacked at any time."

The authority of the court to allow fees for extraordinary services was derived, as above shown, from sections 910 and 911 of the Probate Code. In allowing or "establishing" such fees upon a percentage basis, rather than fixing such fees in a definite "amount" or sum of money, as required by said section 910, the court acted in excess of its authority. The order of August 10, 1932, was void. The court therefore, in considering the petition of respondent, filed June 14, 1943, whereby respondent sought an interpretation of the order of August 10, 1932, was not bound by said order of August 10, 1932, insofar as the fees for extraordinary legal services were concerned.

As above noted, it was held in the *Estate of McDonald, supra,* 37 Cal.App.2d 521, cited by appellant, that the order therein allowing extraordinary fees upon a percentage basis was void. Respondent asserts that a further respect in which that case is distinguishable from the present case is that in the cited case there was a direct appeal from the order allowing fees, and therefore the court had before it the question of the correctness of the allowance. He asserts further that the reasons therein stated for holding that the order was invalid showed that it was not on the ground that the court lacked

jurisdiction to make the order, but the court had made an erroneous order, and the order being erroneous and an appeal having been taken in time, "the error in the making of the order was properly corrected." Although there was a direct attack by appeal upon the order therein, the court held that the order fixing the fees upon a percentage basis was void.

Even if the order of August 10, 1932, had been voidable only and the court had been bound by that order, the interpretation placed upon that order as to the meaning of "40% of estate" was erroneous. Although the inventory and appraisement of 1932, which was before the court when said order of 1932 was made, did not show that there was an encumbrance of $12,200 upon the Slauson Avenue property, the account then before the court did show it. That parcel of property had been recovered for the estate under the agreement, as shown by the account, that the attorneys' fees should be contingent upon the success of the attorneys in collecting assets of the estate. As to that parcel of property the net amount recovered for the estate, as it then appeared, was the difference between the appraisal of $17,000 and the encumbrance of $12,200, or $4,800. The fact that the attorneys had represented the executrix upon the basis that they were not to get anything unless they collected assets of the estate was before the court when the order of 1932 was made, as shown by the testimony of Mr. Caldwell at the hearing in 1943 when said interpretation was made. Under the contention of respondent, and according to the interpretation of the 1932 order by the trial court in 1943, the order allowing "40% of estate" meant that the attorneys should receive 40 per cent of $17,000, or $6,800, which is $2,000 more than the net amount above mentioned recovered for the estate. The expression "40% of estate," as used in the 1932 order, cannot be interpreted reasonably to mean that more than the whole net amount of the estate or of the property recovered by the attorneys upon a contingent fee basis should be paid to them for their services. The proper interpretation of that order is that the court allowed the attorneys as fees for extraordinary services 40 per cent of the net value of the assets of the estate recovered by reason of their services under the contingent fee contract. Under the interpretation for which respondent contends, if there should have been after discovered property, as to the discovery or recovery of which the attorneys

rendered no service, the attorneys would be entitled to 40 per cent of it. It was not the intention of the court in 1932 to allow the attorneys 40 per cent of the appraised value of the estate without deduction of the encumbrance and irrespective of whether the attorneys rendered services in collecting particular items of property. The net value of the estate, in view of the contingent fee contract, was the difference between the selling price of the Slauson Avenue property, $12,500, and the balance due on the encumbrance at the time the property was sold, $7,375, that is, $5,125.

Respondent asserts that if the selling price of $12,500 is to be regarded as the gross value of the Slauson Avenue property (rather than the 1932 appraisal value of $17,000), the attorneys' fees should be computed upon the basis of $12,500 rather than the difference between the selling price and the balance due on the encumbrance. He cites the *Estate of Lampman* (1940), 15 Cal.2d 212 [100 P.2d 488], which states (p. 217) that the test, as to whether encumbrances should be deducted before computing the ordinary fees, is whether or not the administrator is responsible for, or chargeable with, the property upon which the commissions are sought. In that case property, upon which there was an encumbrance, was appraised at $42,500. During the administration the property was sold for $47,500, and the purchaser assumed the encumbrance and paid the executor the difference between the purchase price and the balance due on the encumbrance, to wit: $14,003. The court held therein that the fees should be based upon the $14,003 and not upon the total selling price. Respondent argues that the administrator in the present case was responsible for the total purchase price of $12,500 and therefore the fees for extraordinary services should be computed thereon, since the purchaser did not assume the payment of the encumbrance. There is no practical difference between the facts of the Lampman case and the present case insofar as the matter of assuming the encumbrance is concerned. In that case the encumbrance was assumed in the sense that it was to be paid by the purchaser at a later time. In the present case the sale transaction, as shown by the escrow statement attached to the final account, was that the purchaser did in effect assume the encumbrance, inasmuch as the encumbrance was paid in escrow from money deposited therein by the purchaser, and only the net proceeds after such

payment actually came into the possession of the administrator. The fees should have been determined upon the basis of the net value of the estate, especially in view of the attorneys' contract whereby their fees were contingent upon the results obtained for the estate.

The ordinary fees for legal services, computed upon $5,125, amount to $235. The court having ordered that $100 be paid to Evans, Pearce & Campbell for ordinary legal services in closing the estate, the balance remaining for ordinary legal services performed by Mr. McManus and Mr. Caldwell is $135. Under the contingent contract, and for the other extraordinary legal services of Mr. McManus and Mr. Caldwell, there should be allowed the sum of $2,050, and said sum and the sum of $135 for ordinary legal services should be paid to the administrator-with-the-will-annexed of the estate of A. E. McManus, deceased. The $600 allowed to Adelaide R. McManus, the executrix, under the order of August 10, 1932, and the sum of $135 which would have been due her for ordinary services as executrix should be paid to Rhea McManus, the executrix of her will. The balance of $100 of ordinary fees which would be due the administrator-with-the-will-annexed, who succeeded Mrs. McManus, has been waived by him. After paying said sums amounting to $2,185 to said administrator, and said sums amounting to $735 to said executrix, and the $250 ordered by the trial court to be paid to Evans, Pearce & Campbell, the remainder of the $4,155.57, on hand for payment of expenses and for distribution, should be distributed to the beneficiaries of the specific and residuary bequests under the provisions of the will of Margaret Rackle Rowe, deceased.

The order of October 19, 1943, from which this appeal is taken is reversed.

Desmond, P. J., and Shinn, J., concurred.