[Civ. No. 13386.   First Dist., Div. Two.   Oct. 31, 1947.]

Estate of LOTTA REINHERTZ, Deceased. LILLIAN LEVE, Appellant, v. NATHANIEL REINHERTZ, as Executor, etc., Respondent.

A. Don Duncan for Appellant.

Gus C. Ringole for Respondent.

DOOLING, J.—Lotta Reinhertz died testate on December 9, 1937. By her will she appointed her son Nathaniel Reinhertz executor. She left two apartment houses which we shall hereinafter designate as the O'Farrell Street property and the Steiner Street property, some jewelry and a small amount of cash. The O'Farrell Street property was devised to her daughter Lillian Leve, appellant herein. The Steiner Street property was devised one-half to Nathaniel Reinhertz for his own use and the other one-half to Nathaniel Reinhertz in trust for another daughter, Jennie Gaba, the income to be paid to her for her support, with remainder to appellant's daughter. By a codicil her jewelry was left to Jennie Gaba and her other personal property (a small amount in cash) to Nathaniel Reinhertz.

The O'Farrell Street property was sold at probate sale, the order confirming sale reciting "that all devisees and legatees must contribute according to their respective interests

to the devisee or legatee whose devise or legacy has been sold, and the Court, when distribution is made, must settle the amount of the several liabilities and decree the amount each person shall contribute, and reserve the same from his distributive share for the purpose of such contribution."

No appeal was taken from this order and it has become final. Thereafter the executor filed his second account and the appellant, Lillian Leve, filed a petition for an order determining her interest in the estate, and also objections to the second account. Counsel for the executor objected to the hearing of the petition to determine interest on the ground that it was actually a petition for contribution by a devisee whose devise had been sold in course of administration and could properly be considered only at the time of final distribution. (Prob. Code, § 753.) Thereupon the court directed the executor to file a final account and petition for distribution and continued the hearing until that could be done. An account, designated third and final account, and a petition for distribution were thereafter filed. To the third account appellant filed objections and the hearing was resumed. The probate court settled the second and third accounts as presented but determined that the estate was not ready for distribution. The petition to determine interest was denied on the ground that it was a petition for contribution "to be determined at the time of final distribution of said estate as provided in Section 753 Probate Code."

Appellant contends that her petition to determine interest comes under sections 1080-1082, Probate Code. It was the probate court's conclusion that the petition was governed by Probate Code, section 753. We agree with the probate judge. Appellant's only right is that given her by the latter section which reads:

"When property given by will to persons other than the residuary devisees and legatees is sold for the payment of debts or expenses or family allowance, all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy has been sold, and the court, when distribution is made, must settle the amount of the several liabilities and decree the amount each person shall contribute, and reserve the same from his distributive share for the purpose of such contribution."

The section which gives the right also fixes the time for the court to make its determination, i. e., "when distribution

is made.'' ■ Sections 1080 et seq., are general sections and must yield to the particular section which both creates the right and provides the remedy and its time and manner of exercise. (*Brill* v. *County of Los Angeles*, 16 Cal.2d 726, 732-3 [108 P.2d 443]; *Neuwald* v. *Brock*, 12 Cal.2d 662, 669 [86 P.2d 1047].) Furthermore, it seems clear that the ''amount of the several liabilities'' and ''the amount each person shall contribute'' can only be determined when the estate is ready for distribution for only then can the probate court know the amount and character of property which it has to distribute.

The order settling the second and third accounts is attacked because of the allowances made to the executor at the rates charged in his accounts for services personally performed by him in and about the apartment houses. The executor testified upon the hearing that this work consisted of papering, painting, repair and carpenter work, plumbing repairs, electrical repairs, hanging fixtures, plastering, hanging clothesline and other odd jobs. For this work he charged $1 per hour during the earlier period and later 75 cents per hour. He testified that he had done similar work about the apartment houses for his mother during her lifetime, from which his knowledge of the value of such services may be inferred, and that if he had employed other persons to do the same work the cost to the estate would have been much greater. Three witnesses for the appellant testified that during the period covered by the accounts the same work could have been performed by a handy man at 50 cents per hour. The case presents no more than the usual conflict of evidence which the probate court has resolved. The probate court was not bound to accept the testimony of appellant's witnesses. ■ In the case of services of a nontechnical nature, such as here involved, the judge may fix the value from a description of the services performed bringing to bear his own general knowledge and is not necessarily bound by express evidence of the value of the services performed. (*Nylund* v. *Madsen*, 94 Cal.App. 441, 445 et seq. [271 P. 374]; *Seib* v. *Mitchell*, 10 Cal.App.2d 91, 95 [52 P.2d 281]; *Lundberg* v. *Katz*, 44 Cal.App.2d 38, 46 [111 P.2d 917]; *Geisenhoff* v. *Mabrey*, 58 Cal.App.2d 481, 488 [137 P.2d 36]; *Caminetti* v. *Prudence etc. Ins. Assn.*, 62 Cal.App.2d 945, 953 [146 P.2d 15]; *Collier* v. *Landram*, 67 Cal.App.2d 752, 759 [155 P.2d 652]; *Trumbo* v. *Bank of Berkeley*, 77 Cal.App.2d 704, 712 [176 P.2d 376].)

The point that no allowance could be made for these services because the executor did not secure an order from the probate court authorizing him to continue the operation of the apartment houses under Probate Code, section 572, is foreclosed by *Estate of Scherer,* 58 Cal.App.2d 133 [136 P.2d 103]. The court in that case said in answer to a similar objection to an allowance of extra compensation for continuing a business of the decedent without prior authorization (p. 144):

"It must be conceded that the probate court was clothed with power to authorize the executor to conduct testator's business. Therefore the court possessed the power to ratify such action on the part of the executor, done without a previous court order (*Estate of Maddalena,* 42 Cal.App.2d 12, 19 [108 P.2d 17]). Especially is this true where the carrying on of the business was a necessary means to preserve the estate."

It would have been an act of extreme improvidence, of which the appellant could have justly complained, if the executor had not continued the operation and upkeep of the apartment houses which constituted almost the entire estate of his testatrix.

Appellant is in no position to argue that the failure of the court to find that notice of the settling of the accounts was given as required by Probate Code, section 1200, invalidates the order settling the accounts. She appeared, filed objections to the accounts and had a full hearing before the court. The record shows no claim before the probate court that the required notices were not given. Having voluntarily appeared and contested the accounts she is foreclosed from urging the want of statutory notice. (*Estate of Palm,* 68 Cal.App.2d 204 [156 P.2d 62] and citations on p. 214; 34 C.J.S. 980.)

Complaint is also made of the basis of computation of the ordinary executor's and attorney's fees in the two accounts as settled. The O'Farrell Street property was sold at probate sale for $4,750. The O'Farrell Street property and the Steiner Street property were subject to a blanket mortgage to Wells Fargo Bank and Union Trust Company to secure the payment of a note executed by the testatrix in favor of the mortgagee. The mortgagee presented a creditor's claim based on this note and mortgage which was approved in the sum of $12,653.23. At the time of the sale of the O'Farrell

Street property the bank insisted on the payment to it of $4,273.50 of the purchase price on account of its note and mortgage. The purchase price was paid in escrow to a title company and the escrow holder paid $4,273.50 directly to the bank and the balance only to the executor. Executor's and attorney's fees were calculated on the full sale price of $4,750. Appellant claims, citing *Estate of Lampman,* 15 Cal.2d 212 [100 P.2d 488] and *Estate of Rowe,* 66 Cal.App.2d 594 [152 P.2d 765], that the fees should have been calculated only on the net to the estate after deducting from the sale price the $4,273.50 paid by the escrow holder to the bank.

A careful reading of *Estate of Lampman, supra,* which was followed in *Estate of Rowe, supra,* satisfies us that it is not controlling in the case before us. There the property sold was subject to a deed of trust to secure the payment of a debt. The debt was not that of the decedent but of a prior owner and no claim based thereon was filed in the probate proceedings. The property was sold subject to the deed of trust which the purchaser assumed. Under the special facts the court held that only the decedent's equity was sold and only the net amount actually received on the sale by the executrix should be used in calculating the ordinary fees of the executrix and her attorney. The court said (p. 215) that " 'the amount of the estate accounted for' is the base for reckoning commissions" and pointed out that in the case before it the executrix was only chargeable with the amount actually received by her (p. 219). The court quoted with approval *Estate of Pease,* 149 Cal. 167 [85 P. 149] but distinguished it on the ground that in the Pease case the mortgage secured a debt of the decedent, a claim for which had been presented to the estate, saying (p. 218):

"Likewise, in *Estate of Pease, supra,* the debt was a debt of the decedent, and a claim therefor had been presented to the estate. The court in allowing to the executor a commission based upon the total sale price of the property held that the payment of the mortgage was done by the real estate broker as an agent of the executor, and based its holdings upon the fact that 'the executor is bound to account to the court for the entire proceeds of sales made under its orders.' "

In the case before us, as in *Estate of Pease, supra,* 149 Cal. 167, the mortgage debt was a debt of the estate which the executor was bound to pay from the mortgaged assets of the estate. He was bound to account to the probate court for the full sale price, to pay therefrom the $4,273.50 in reduc-

tion of the mortgage claim against the estate and to take credit for such payment. ·As in the Pease case the payment by the escrow holder to the mortgagee was done as agent of the executor. The case before us is governed by *Estate of Pease, supra,* rather than *Estate of Lampman, supra.* The probate court correctly calculated commissions on the full sale price of the O'Farrell Street property.

What has been said on this point sufficiently disposes of the claim that the balance of the mortgage debt should be deducted from the value' of the Steiner Street property in calculating statutory commissions of the executor and his attorney.

In the accounts the executor's and attorney's statutory fees were calculated on the gross receipts from the two apartment houses without deducting the expenses of operation. The statutory fees should not have been calculated on this basis. The operation of an apartment house is not in the same class as the ordinary rental of real property and partakes more of the nature of the operation of a business. The test of the property upon which the statutory commissions should be calculated is laid down in *Estate of Lampman, supra,* 15 Cal.2d 212, 215 as follows: "It is apparent that 'the amount of the estate accounted for' is the base for reckoning commissions, and that once this figure is established the matter of determining the correct statutory fees is merely a matter of computation." In the operation of a business the executor is bound to, and should, only account to the estate for the net income or profits. (*In re Rose,* 80 Cal. 166 [22 P. 86]; *Estate of De Rome,* 175 Cal. 399 [165 P. 919]; cf. *Estate of Allen,* 42 Cal.App.2d 346 [108 P.2d 973].) The rule of these cases is thus stated in 11b California Jurisprudence 545:

"The detailed statement of business operations continued by the representative should not be set out in his account with the item of gain or loss reported as a credit or charge; if reported at all they should be in a separate paper, perhaps as an exhibit attached to the account. In such an account of business operations the estate is not interested, being concerned only with profits made."

It seems clear that in this case the net and not the gross income is the proper basis for calculating the statutory fees. The case is unlike *In re Ricaud,* 70 Cal. 69 [11 P. 471], where ordinary rental received from real property not oper-

ated as a business was involved. In *Estate of Lampman, supra,* 15 Cal.2d 212, while the fees were apparently calculated on the gross income from an apartment house the propriety of this method was not one of the points presented to or decided by the court on appeal and on that question the case has not the force of an authority.

Pending the other appeals the executor petitioned the probate court for an order authorizing the payment to Jennie Gaba of $1,732.25, the petition reciting that "one-half of the net income of the said property devised in trust to petitioner for himself and Jennie Gaba amounts to the sum of $1,732.25." After a hearing in which appellant opposed the petition an order was made authorizing the executor to pay to Jennie Gaba $1,959.75 "from time to time as the said sum becomes available in cash in his hands." From this order a separate appeal has been prosecuted.

This order cannot stand. We have already held that upon final distribution appellant is entitled to have a portion of the remaining estate distributed to her in lieu of the property specifically devised to her which has been sold. It is clear that under the circumstances, since the Steiner Street property and its income are the sole remaining assets of the estate, the contribution to appellant in lieu of her specific devise must come from this source. Under the circumstances Jennie Gaba is not entitled to one-half the net income from the Steiner Street property but only to the income from one-half of the portion of the Steiner Street property which is not distributed to appellant in lieu of her specific devise. We do not hold that no payment to Jennie Gaba would be authorized before final distribution but we do hold that in making any order for such payment the order must be framed in such fashion as to protect appellant from the possible impairment of her as yet undetermined distributive share. The only basis for the order here made is the testimony of the executor, unsupported by any account, that: "There is now due to her the sum of $1900.00 which is one-half net income from property devised to her in trust. I am asking for an order for the payment of that sum to her when it is in the estate. I do not believe there is that much on hand now."

It is clear not only that Jennie Gaba is not entitled to a full one-half of the net income from the Steiner Street property but that her share must further be reduced by her pro rata of the expenses of administration properly apportioned. (Prob. Code, § 750.) Under the circumstances the

order for the payment of $1,959.75 to Jennie Gaba is excessive and not supported by the evidence.

Some attempt is made to support this order on the ground that under the will money for her support may be paid to Jennie Gaba from the principal of the estate held for her in trust if necessary. No evidence of any such necessity was introduced and the petition and order for payment are not based on that theory. Any order based on the theory that it was necessary to make a payment for support out of principal should so recite and should make express provision that the payment so made should be a charge against the property devised in trust for Jennie Gaba.

We need not consider the propriety of respondent's request in the probate court for compensation for extraordinary services in opposing appellant's petition to determine interest since no order for such compensation was made.

This small estate has been in probate for something like 10 years and it is to be hoped that it may soon be finally distributed.

The order settling the second and third accounts and the order for payment to Jennie Gaba are reversed. The order denying appellant's petition to determine her interest in the estate is affirmed. It is further ordered that each side bear its own costs on the appeals from the order settling accounts and denying appellant's petition to determine interest which were presented in one transcript and that appellant recover costs on her appeal from the order for payment to Jennie Gaba.

Nourse, P. J., and Goodell, J., concurred.

THE COURT.—On petition for rehearing, respondent questions the correctness of our construction of Probate Code, section 753, as authorizing a distribution to appellant by way of contribution of a portion of the property remaining in the estate. We can place no other reasonable construction on the language of the section: "The court . . . must . . . decree the amount each person shall contribute, and *reserve the same from his distributive share* for the purpose of such contribution."

In *Estate of Stevens,* 27 Cal.2d 108, 118 [162 P.2d 918], the court said (referring to this section): "If a right of contribution is eventually established, the total of the assets re-

maining in the estate from which contribution would be made should presumably be greater than if a compromise had not been effected, and thus the appellant's ultimate distributive share of the estate will be greater.''

A petition for a rehearing was denied November 25, 1947, and the above opinion was then rendered.