[Civ. No. 32391.   Second Dist., Div. One.   Nov. 25, 1968.]

Estate of ROBERT M. STEIN, Deceased. ESTELLE O. STEIN, Individually and as Executrix, etc., et al., Appellants.

Jay J. Stein, in pro. per., for Appellants.

FOURT, J.—Estelle O. Stein, both individually and as the executrix of Robert M. Stein, deceased, and Jay J. Stein, both individually and as attorney for the executrix, appeal solely from that portion of the probate court's order settling the executrix' second account current and determining fees which revised and reduced statutory fees and commissions.

Appellants contend that the court incorrectly computed the statutory compensation by deducting from the total value of the estate assets the entire appraised value of certain substantial property which was foreclosed upon during the probate period instead of deducting therefrom only the estate's equity in the property.

The record shows that Robert M. Stein died on February 13, 1963, a resident of Los Angeles County. Only a few months before his death the decedent and his wife had purchased the business and assets known as The Santa Ynez Inn located at 17310 Sunset Boulevard, Pacific Palisades, California. The Santa Ynez Inn was a substantial business which employed a number of persons and provided room accommodations, services, meals and beverages to numerous guests each year. The decedent and his wife continued until his death to operate the hotel, restaurant and beverage business under that name at the same location.

The aggregate value of the real property and improvements of the Santa Ynez Inn at the time of Stein's death were appraised at $1,000,000 and the fixtures and furnishings essential for its operation were appraised at an aggregate value of $495,000. The $1,495,000 total appraised value of these properties (which for convenience will hereinafter be

referred to collectively as the Santa Ynez Inn) represented a substantial part of the estate assets. The property was encumbered by a first trust deed in the amount of $600,000 which had been assumed by the decedent and his wife at the time of their purchase, and a second trust deed in the additional sum of $898,000. The total unpaid principal balances on these trust deeds which represented purchase money obligations of the decedent and his wife were $1,494,523.40 at the date of death.

On February 21, 1963, Estelle Stein was appointed special administratrix and she continued to operate the Santa Ynez Inn under court order up to the time she qualified as executrix on March 25, 1963. Under the provisions of the decedent's will, his executrix (and her corporate coexecutor) were authorized to continue to hold, manage and operate any property or business that decedent held or owned at the time of his death, the profits or losses, if any, therefrom to inure to or be chargeable against the decedent's estate and not to his executrix or executor. The corporate coexecutor declined to serve. However, pursuant to her testamentary authority and four implementing orders of the probate court dated April 16, 1963, June 30, 1964, December 9, 1964, and February 25, 1966, respectively, the executrix continued to operate the Santa Ynez Inn from about March 25, 1963 until on or about March 16, 1966. It is undisputed that during that period the executrix continuously, but unsuccessfully, attempted to sell the Santa Ynez Inn. Finally, because of the losses sustained by her in the operation of the business and the threat of further continuing operational deficits, she concluded that it would be in the best interests of the estate and those interested therein for her to discontinue operations of the Santa Ynez Inn and to effect certain transactions to allow the secured creditors to preserve and sell the business.

Accordingly, the executrix ceased to make installment payments on the respective trust deeds in February 1966, and notices of default under the second trust deed were recorded in March 1966. Following negotiations with representatives of the persons who were the beneficiaries under the second trust deed, the executrix consented to have them take possession. As a result, on March 16, 1966, the executrix discontinued the business of the Santa Ynez Inn and sold the liquor license and food and beverage inventory to the second trust deed beneficiaries who went into possession. This transaction was memorialized by a written agreement of sale which was approved

and confirmed by the court in its order dated May 5, 1966. Thereafter, and on or about July 13, 1966, the Title Insurance and Trust Company, by exercise of its private power of sale as trustee under the second trust deed, sold the entire Santa Ynez Inn property at foreclosure sale.

The executrix in her first account current and report based her estimate of the statutory compensation to which she and her attorney each would be entitled upon an estate valuation which included the total appraisal value of the Santa Ynez Inn. The court, at that time, upon request of the executrix, authorized payment to her attorney of $12,000 on account of statutory fees. The executrix in her second account current and report filed June 29, 1967, set forth all of the foregoing facts concerning the cessation of her operation of the Santa Ynez Inn, and estimated statutory compensation attributable to her services and those of her attorney including the full appraisal value of the Santa Ynez Inn. The executrix further requested authorization to pay to herself $15,000 and to her attorney an additional $3,000 on account of their respective statutory fees, and asked that she also be authorized to pay to each compensation for extraordinary services to the estate. An appearance was made by one of the estate's creditors which filed objections to the proposed computation of statutory commissions and fees in the second account on the ground that the estate had and recovered no equity in the Santa Ynez Inn property of which it was divested by the foreclosure sale.

The court at the hearing on the second account, although conceding that the computation of compensation proposed by the executrix would have applied had no equity remained for the estate following a probate sale, concluded that because the Santa Ynez Inn was lost by foreclosure, the entire appraised value thereof should be deducted from the original appraisal value of the total estate as the measure of loss in arriving at the statutory compensation due the executrix and her attorney. The court thereupon made its order allocating to the executrix $29,600 and to her attorney $12,000 as extraordinary compensation and reducing statutory compensation to $3,000 according to its computation of the remaining value of the estate assets. The order further provided that the $12,000 theretofore paid to the attorney should be deemed credited against the sum ordered paid to him for his extraordinary services rather than against statutory fees. The objecting creditor immediately following the hearing on July 26, 1967,

filed a formal withdrawal of its objection, and accordingly there is no respondent before this court.

The single question raised on appeal is whether the probate court correctly computed statutory fees under the facts of this case. We are persuaded that it did not and that appellants are correct in their contention that each was entitled to statutory fees based upon the total value of the estate administered, including the Santa Inez Inn property, less only the loss in equity occasioned by the foreclosure.

We base our conclusion upon the prior decisions of the California appellate courts viewed in the perspective of the recent amendment to Probate Code section 901. That section constitutes statutory authority for the computation of the executor's commissions as a fixed percentage of the estate assets on a scale graduated according to the value of the estate. The following paragraph was added in 1965: ''The commission to which the executor or administrator is entitled pursuant to this section shall be based upon the total amount of the inventory plus gains over appraisal value on sales, plus receipts, less losses on sales, without reference to encumbrances or other obligations on property in the estate, if any. This paragraph shall apply whether or not a sale of property has taken place during the probate of the estate.'' Probate Code section 910 directs that attorneys shall receive the same statutory compensation as executors and administrators.

Orders of the probate court directing the payment of statutory fees to representatives and attorneys are controlled by the law as it exists on the date of the order since only then can the amount of the estate accounted for be known (*Estate of Johnston,* 47 Cal.2d 265 [303 P.2d 1]), even though in the absence of special circumstances compensation is generally determined by the original appraisal value of the estate assets. Since the order herein appealed from was made and entered on July 26, 1967, after the effective date of the statutory amendment, Probate Code section 901 as amended is applicable in this case.

From the scant information available concerning the purpose and effect of the 1965 amendment to Probate Code section 901, it appears that it was enacted in an effort to equalize the computation of commissions and fees by courts in various counties within the State of California. ''The computation of these commissions has varied from county to county, especially when the estate includes encumbered real property. The usual practice in calculating the total amount of the

estate has been to include the market value of encumbered real property, undiminished by any encumbrances. However, if encumbered real property is sold during probate, the calculation of the amount of the estate is based on decedent's equity in the encumbered property. To secure reasonable commissions in this circumstance, the executor or administrator must apply for an extraordinary commission. Prob C § 902. The courts in some counties are moderately liberal in granting petitions for extraordinary commissions; courts in other counties are not.

"As amended, § 901 establishes a uniform basis for calculating the commission of the executor or administrator. The commission shall be based on the total amount of estate assets, plus (a) gains on sales over appraisal value and (b) receipts, and less losses on sales. The computation is made without reference to encumbrances or other obligations on estate property. This applies *whether or not a sale* of property has taken place during the probate of the estate." (Review of Selected 1965 Code Legislation (Cont.Ed.Bar) page 222.) (Italics added.)

Prior to the amendment of Probate Code section 901 the appellate decisions displayed some inconsistency in regard to the appropriate measure of the estate's value for the purpose of determining statutory compensation due the executor and his attorney when a sale of encumbered property took place during the probate period, especially in the case of real property. ■ Under the present statute and its earlier counterparts, the executor's commissions are to be computed on the "amount of estate accounted for by him, . . ." (Prob. Code, § 901; former Code Civ. Proc., § 1618; *Estate of Carver,* 123 Cal.102 [55 P. 770].) Clearly, "the principle which underlies all of . . . [the] cases dealing with the question of the 'amount of the estate accounted for' by an executor or administrator, is the premise that the measure of the executor's responsibility is the measure of his compensation." (*Estate of Lampman,* 15 Cal.2d 212, 217-218 [100 P.2d 488].) Though guided generally by this principle, our appellate courts have reached results which vary, presumably, in their assessment of the measure of responsibility assumed by the executor.

For example, the coexecutors in one recent case acquired the decedent's interest in margin accounts carried at two stock brokerage offices to which the securities were pledged. As the coexecutors from time to time directed the sale of

certain securities by order of the probate court that broker who liquidated the assets applied the proceeds first to the satisfaction of the decedent's indebtedness and ultimately turned over only the balance to the estate. The court observed that the stocks were carried not in the decedent's name but in a street name, and the decedent did not have possession of the certificates. Accordingly, commissions were allowed only upon the equity balances paid over to the coexecutors. (*Estate of Wittenberg,* 202 Cal.App.2d 867 [21 Cal.Rptr. 258].) In the *Estate of Boggs,* 33 Cal.App.2d 30 [90 P.2d 814], quoted and relied upon in *Wittenberg,* the decedent owned both real property and securities which were held by a bank under a deed of trust and pledge agreement to secure a substantial indebtedness of the decedent. The bank collected the income attributable to these assets, sold stock both before and after the qualification of the executrix, and applied the proceeds to the indebtedness leaving an unpaid balance. The court there noted that ''the executrix is required to set forth all of the estate which shall have come to her knowledge but she is chargeable in her account with only that part of the estate which may have come into her possession. In demanding fees for her services she is entitled to payment based upon the value of the estate which is 'accounted for'.'' (*Estate of Boggs, supra,* 32.)

In a different vein are two other cases (*Estate of Pease,* 149 Cal. 167 [85 P. 149]; and *Estate of Reinhertz,* 82 Cal.App.2d 156 [185 P.2d 858, 186 P.2d 755]) in each of which encumbered real property owned by the decedent was sold at probate sale and the court computed the ordinary fee of the representative on the gross sales price. The characteristics of these situations relied upon by the courts in reaching their decisions appear to have been the following: that in each case encumbered real property constituted an asset of the estate; that the decedent in each case was personally liable for the payment of such encumbrances; that the secured creditor in each instance filed a claim for the obligation with the estate; that the personal representative took possession of the property; that the property was sold during the course of administration; that the executor in each instance accounted for the full sale price and the payment of the debt to the probate court. Although in each case the mechanics of the transaction were handled by an intermediary, the courts experienced no difficulty in regarding the escrow agent and real estate broker, respectively, as the agent of the executor in actually receiving

from the purchaser and disbursing to the secured creditor the proceeds of the sale.

Another line of decisions appears to have been generated by the *Estate of Lampman,* 15 Cal.2d 212 [100 P.2d 488]. In that case the decedent owned an apartment house which was appraised at $42,500. The property was encumbered by a $38,000 trust deed which the decedent had assumed from a prior owner. The executrix managed the apartment building, and its sale during probate for $47,500 to a purchaser who, in turn, assumed the existing encumbrance, was confirmed by the court. The trial court's determination that since the creditor filed no claim the amount of the debt should be deducted from the appraisal value in determining the amount of the estate accounted for, leaving only the equity of $14,000 realized on the sale as the basis for computing the executrix' fees was affirmed on appeal. This, in the eyes of the court, was the debt of another, assumed by the decedent and merely transmitted to a third party during the course of probate. In rationalizing its decision the appellate court observed ''This power of the court to grant additional fees for extraordinary services is one which may be used to equalize any injustice which may result when the estate upon which the commissions are allowed is small, and the services involved are extra onerous.'' (*Estate of Lampman, supra,* 219.)

Although that sound principle for the award of extraordinary commissions and fees, is not abrogated by the amendment to Probate Code section 901, executors and attorneys are by that amendment assured of appropriate statutory compensation unrelated to their extraordinary services and independent of the discretion of the probate court where encumbered property comes into the hands of the decedent's representative. None of the cases arising since the amendment appears to have raised the issue before us. However, the decision in one case which arose before the amendment became effective was rendered after its enactment and the court there observed: ''The rule of *Estate of Lampman* has been abrogated by the 1965 amendment to Probate Code section 901.'' (*Estate of Roscelli,* 245 Cal.App.2d 188, fn. 1 [53 Cal.Rptr. 866].)

The clear import of section 901 is that if the Santa Ynez Inn assets had been distributed under a decree of the probate court, or if a probate sale of those assets had been completed, then the statutory compensation of executrix and attorney, respectively, would have been properly computed on an estate

value including the appraised value of those assets, plus or minus gain or loss on the probate sale, but without reference to the amounts of the encumbrances. Thus we are confronted with the question as to whether the executrix, who managed these assets and made payments upon the encumbrances with a view to their eventual sale at an advantageous price, should be penalized by loss of statutory compensation because she was unable to realize her goal and was forced to succumb to foreclosure proceedings.

We are impressed by the potentially inequitable consequences of a statutory construction which should exclude foreclosure sales from the application of amended Probate Code section 901. If, in the present case, a probate sale had provided a net sum sufficient to satisfy in full the encumbrances upon the Santa Ynez Inn, which totaled $1,445,000.96, this figure would have been deducted from the appraised valuation of $1,495,000 in computing the loss to the estate as $49,999.04. Since both obligations were purchase money encumbrances, neither the decedent nor his estate was subject to personal liability, and the loss in equity value is the maximum loss the estate might sustain. Although the court ruled that this principle did not apply because the foreclosure transaction was not a sale, it appears that in the foreclosure and the probate sale situations the consequences to the estate would be the same: the estate would no longer have the Santa Ynez Inn or the obligation to make payments on the encumbrances secured thereby, and the actual loss would be $49,999.04 in equity. Moreover, this would be true in case of a probate sale whether the purchaser paid the price in cash and the executrix paid the indebtedness in full, whether an escrow agent or broker handled the transfer of the funds, or whether the purchaser made no cash payment but merely took subject to or assumed the encumbrances. It applies to the trustee's sale in the present case.

At the date of his death the decedent's equity in the Santa Ynez Inn was only $476.60 (the difference between the appraisal value of $1,495,000 and the then unpaid principal balances totaling $1,494,523.40) while at the time of foreclosure the payments made by the executrix over the three year period of administration had increased the equity (and hence the loss) to $49,999.04. There is a substantial difference in statutory fees computed by deducting the entire appraised value of this asset and those computed on the basis that the deductible loss was merely the estate's equity value in the property.

One of the older California decisions under Code of Civil Procedure section 1618 from which Probate Code section 901 was derived, considered.a situation in which the trial court had found the executrix guilty of negligence but not conversion, commingling or deliberate misconduct, in handling estate assets, and denied her statutory fees attributable to the value of the real property that was lost by foreclosure. The foreclosure suit was eventually compromised and the mortgagee waived his right to a deficiency judgment, but the property was taken to satisfy the debt. The court said: "The appraised value of the land was charged to appellant in her account, and the fact that it was taken under a decree foreclosing the mortgage, and applied to the payment of a debt against the estate, was shown by the account.

"Appellant should therefore be allowed commissions in the amount stated in her account." (*Estate of Carver*, 123 Cal. 102, 106 [55 P. 770].) We can find, under our present statute, no logical distinction in the fact that the encumbrance foreclosed upon in the present case was one in which the decedent had incurred no personal liability since this characteristic of the original transaction merely protected the estate from losses larger than its equity immediately prior to the foreclosure.

█ A reasonable interpretation of the amendment compels the conclusion that it was intended that statutory fees be computed on the appraised value of the property included in the estate whether or not there is a sale or a foreclosure during probate. If there is a sale, the gain or loss over appraised value is taken into account by appropriate adjustments. If a foreclosure should not be considered a sale, then no gain or loss would be accounted for in such a transaction and either the entire appraised value of the property or none of its value should be included in computation of statutory fees. Since either extreme result is illogical, we are persuaded that a foreclosure must be considered a sale within the terms of the statutory amendment. This construction allows the appropriate loss to the estate to be taken into account. The loss may, in a given case, be limited to the equity of the decedent and his estate in the property; it may be larger if a deficiency is asserted and imposed against the estate. In any event, if the property cannot be disposed of by probate sale and the executor has no alternative against a foreclosing creditor, it does not stand to reason that he should be encouraged to effect a prompt transfer of the property to the heirs or beneficiaries

in order to avoid the consequences of foreclosure and to obtain his statutory fee on the entire value of the property. Since the executor is compelled to take the decedent's estate and the incidents thereof as he finds them, and he may have little practical choice in the manner of handling the payment of obligations, it is reasonable to accommodate him with statutory commissions appropriate to the appraised value of the asset, less whatever loss the estate may incur as a result of the foreclosure, should that become unavoidable. Nor should he be compelled, under these circumstances, to look to the court's discretion in the award of extraordinary fees to compensate him for his trouble.

■ Finally, as the court observed in *Estate of Carver, supra,* 123 Cal. 102, 104, "The administrator is chargeable with debts which remain uncollected through his fault or neglect [citation], and if he has been guilty of neglect, or has wasted, embezzled, or mismanaged the estate, his letters may be revoked [citation]; but it is nowhere provided that for any fault, mismanagement, neglect, or loss resulting therefrom that he shall be deprived of the compensation provided by law; though in such cases the administrator will be charged with the loss and credited with his commissions; so that, so far as necessary, his commissions will be applied to the payment of such losses." While we cannot say that a loss through foreclosure of estate assets constitutes prima facie mismanagement, surely it constitutes evidence on the factual issue which under appropriate circumstances may be raised before the probate court. A motion to surcharge would properly open the question which may arise of how and why estate assets were sold at foreclosure. ■ It is clear from the record in this case in any event that the executrix in continuing the operation of the business at all times was acting under appropriate orders of the court, and that the court also approved and confirmed her action in discontinuing the business operation and transferring possession. Having managed these estate assets under proper authority of the will and the probate court, she and her attorney are entitled to statutory fees computed in accordance with the principles set forth in this opinion.

That portion of the court's order appealed from is reversed with directions that the probate court recompute statutory fees and commissions in accordance with the principles set forth in this opinion.

Wood, P. J., and Lillie, J., concurred.