OPINION
The administrator of an estate operates a business owned by the decedent. Here we hold that the administrator's fees are calculated upon the net receipts, not the gross receipts of the business.
Philip A. Larry, administrator of the estate of Maria Luisa Sanchez, deceased, appeals an order of the probate court settling the third and final account and allowing compensation for ordinary and extraordinary services. We affirm.
 FACTS
Maria Luisa Sanchez died on May 22, 1985, in Ventura County. At the time of her death, Mrs. Sanchez owned La Perla Market, a liquor store, and La Perla Tortillaria, a restaurant. Mrs. Sanchez's four adult children survived her. Prior to her death, the children had commenced litigation among themselves concerning the two businesses.
On October 24, 1986, the probate court appointed Philip A. Larry as administrator of the estate, to act without court supervision under the Independent Administration of Estates Act. Larry operated the liquor store and restaurant without much financial success. Given the disagreements among the heirs, Larry's caretaking task proved daunting. In settling an early accounting, the probate judge stated that Larry was "somewhat too much of a `nice guy' in dealing with decedent's family." On April 18, 1988, the court authorized Larry to discontinue operating the businesses.
Soon after, the City of Oxnard condemned the real property upon which these businesses were situated through eminent domain. The probate court approved the compensation awards offered by the Oxnard Redevelopment Agency.
In a third and final accounting, Larry and his attorneys requested fees for their ordinary services to the estate, calculated in part upon the gross income of the liquor store and restaurant. The heirs resisted this request and contended that fees for ordinary services should be calculated upon the net income of the businesses (gross receipts minus operating expenses). The probate court, relying upon Estate of Reinhertz
(1947) 82 Cal.App.2d 156, 163-164 [185 P.2d 156], agreed with the heirs. Because the businesses did not earn any profits during Larry's administration, he earned approximately $12,000 less in ordinary fees. His attorneys likewise received approximately $12,000 less in fees. *Page 242 
Larry appeals and contends he is entitled to fees based upon the gross receipts received by the liquor store and restaurant, without any offsets for expenses.
 DISCUSSION (1) Larry asserts Probate Code sections 10800, subdivision (b), and 10810, subdivision (b),[1] require the trial court to award fees for ordinary services based upon the gross receipts received by a business. Subdivision (b) of each section provides: "[T]he value of the estate accounted for by the personal representative is the total amount of the appraisal value of property in the inventory, plus gains over the appraisal value on sales, plus receipts, less losses from the appraisal value on sales, without reference to encumbrances or other obligations on estate property."
Larry relies upon the phrase "plus receipts" of subdivision (b) to argue the Legislature intended fees for ordinary services to rest upon the gross receipts of a business. He contends that legislative amendments to the Probate Code in 1965 changed the rule of Estate of Reinhertz, supra, 82 Cal.App.2d 156, 163-164. Larry also reasons that because he is personally responsible for every dollar passing through the estate, he should receive commensurate compensation.
Reinhertz concerned executor's and attorney statutory fees based upon the value of an estate that included two apartment buildings. Reinhertz held: "The operation of an apartment house is not in the same class as the ordinary rental of real property and partakes more of the nature of the operation of a business. . . . [¶] . . . [¶] . . . [T]he net and not the gross income is the proper basis for calculating the statutory fees." (Estate ofReinhertz, supra, 82 Cal.App.2d 156, 163; accord, Estate ofSwanson (1959) 171 Cal.App.2d 437, 442 [340 P.2d 695] [fees calculated upon net income from operation of motel].) The rationale for this rule is that an executor is bound to account to an estate only for the net income or profits of a business he continues to operate. (Reinhertz, supra, 82 Cal.App.2d 156, 163.)
Eighteen years after Reinhartz, in 1965, the Legislature amended Probate Code former section 901 to add this provision: "The commission to which the executor or administrator is entitled pursuant to this section shall be based upon the total amount of the inventory plus gains over appraisal value *Page 243 
on sales, plus receipts, less losses on sales, without reference to encumbrances. . . ." Sections 10800, subdivision (b), and 10810, subdivision (b), replaced section 901 in 1990 and use the same "plus receipts" language.
The 1965 amendment to former section 901 did not change the rule of Reinhertz. The amendment was directed to the inclusion of mortgages and liens upon real property to the estate base for purposes of calculating the administrator's and attorney fees for ordinary services. The 1990 Law Revision Commission Comment to section 10800 (replacing former section 901) stated: "Before 1965, the usual practice was to use gross value of real property to calculate the statutory fees unless the property was sold during probate, in which case only the decedent's equity in the property was used. Under the 1965 revision to former Probate Code Section 901 . . . gross value was used, whether or not a sale had taken place." Thus, the amendment pertains to the calculation of fees where encumbered real property is sold during probate.
Estate of Stein (1968) 267 Cal.App.2d 631 [73 Cal.Rptr. 324], does not support Larry's contention. Stein concerned calculation of statutory fees where a secured creditor forecloses upon estate real property. Stein held: "A reasonable interpretation of [former section 901] compels the conclusion that it was intended that statutory fees be computed on the appraised value of the property included in the estate whether or not there is a sale or a foreclosure during probate." (Id., at p. 641.) Stein, therefore, concluded that ". . . a foreclosure must be considered a sale." (Ibid.) Stein did not concern statutory fees based upon gross or net receipts of a business.
In sum, the 1965 amendment to section 901 did not change theReinhertz rule because that amendment concerned valuation of real property, possible encumbrances thereon, and probate sales. We interpret this legislation to carry forth the obvious legislative intent regarding statutory probate fees and mortgaged real property. (Code Civ. Proc., § 1859) We also view the phrase "plus receipts" in context of the statute. (Granberry v. IslayInvestments (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652] [the court must interpret a statute in context].) The words preceding and following "plus receipts" pertain to the valuation of property in the estate base and not to the operation of a decedent's business.
The statutory fees of an administrator or estate attorney should derive from the net, not gross, receipts from continued operation of a decedent's business. (2 Cal. Decedent Estate Practice (Cont.Ed.Bar 1994) § 20.23, pp. 20-21; Ross, Cal. Practice Guide: Probate (The Rutter Group 1993) § 16:313, p. 16-82.) The courts have followed Reinhertz since 1947, despite *Page 244 
the 1965 amendments to section 901 Larry's arguments are best directed to the Legislature.
Larry attempts to distinguish Reinhertz because here he acted with specific authority in managing the decedent's businesses.Reinhertz, however, did not expressly consider the executor's authority to act in stating its holding.
Accordingly, the judgment is affirmed. Larry shall bear costs on appeal.
Stone (S.J.), P.J., and Yegan, J., concurred.
[1] Unless otherwise stated, all statutory references are to the California Probate Code.
Sections 10800 and 10810 now govern the computation of executor's and attorney fees as a fixed percentage of the estate assets on a scale graduated according to the value of the estate. *Page 245